[No. B215764. Second Dist., Div. One. June 29, 2010.]

NANCY HOFFMEIER ZAMORA, as Trustee in Bankruptcy, etc., Plaintiff and Appellant, v.
STEPHEN C. LEHMAN et al., Defendants and Respondents.

2

4

## COUNSEL

Ford & Serviss, William H. Ford III and Claudia J. Serviss for Plaintiff and Appellant.

Rutter Hobbs & Davidoff, Brian Leslie Davidoff, Christopher C. Fowler; and Frank D. Hobbs for Defendants and Respondents Stephen C. Lehman and Eric R. Weiss.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Mark T. Drooks and Bonita D. Moore for Defendant and Respondent Daniel M. Yukelson.

## OPINION

**MALLANO, P. J.**—A trustee in bankruptcy filed this action against three former officers of a defunct company, alleging breach of fiduciary duty. Two of the officers engaged in discovery; the third attempted to settle the action as to himself only. Four months before trial, defendants remembered that their employment agreements contained an arbitration provision. They moved to compel arbitration. In opposition, the trustee argued defendants had waived the right to arbitrate by delay in bringing the motions and by engaging in discovery not available under the arbitration provision.

The trial court granted the motions, stating that because defendants had forgotten about the arbitration provision, they had not relinquished a known right. Further, the trial court found that the same amount of discovery would have been allowed by an arbitrator. After the ruling, the trustee claimed she lacked the funds to arbitrate the case and declined to initiate arbitration. As a consequence, the trial court entered a judgment of dismissal with prejudice. The trustee appealed.

The trustee contends defendants waived the right to arbitrate notwithstanding that they forgot about the arbitration provision. Defendants argue a waiver requires the relinquishment of a known right and point out the motions to compel arbitration were brought shortly after their attorneys first learned about the arbitration provision.

We conclude a waiver of the right to arbitrate does not require the relinquishment of a known right under the Federal Arbitration Act (FAA)

(9 U.S.C. §§ 1–16) or the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2; undesignated section references are to that code). And as provided by the rules adopted in the arbitration provision, the parties were not entitled to any discovery in an arbitration proceeding. Accordingly, the two defendants who conducted discovery in the trial court waived arbitration because they acted inconsistently with the right to arbitrate. As to them, the order compelling arbitration and the judgment dismissing the action are reversed. But the remaining defendant, who sought to settle the case, did not act inconsistently with the right to arbitrate. As to him, the order and judgment are affirmed.

I

BACKGROUND

The allegations and facts in this case are taken from the complaint and the papers submitted on the motion to compel arbitration.

A. *Complaint*

The original complaint was filed on December 19, 2005. A first amended complaint (complaint) was filed on May 4, 2006. It alleged as follows.

e4L, Inc. (e4L), was a direct marketing company that promoted a wide variety of products via television, radio, and the Internet. Each week, e4L broadcast more than 3,000 half-hour television programs, commonly known as infomercials, around the world. The infomercials reached 100 percent of the "television homes" in the United States and 370 million "television households" in more than 70 countries worldwide.

Stephen C. Lehman was the chairman and chief executive officer of e4L. Eric R. Weiss was the vice-chairman and chief operating officer. Daniel M. Yukelson was the chief financial officer. All three were directors.

"The directors controlled and dominated e4L for their own personal benefit by issuing misleading press releases announcing that e4L (1) had raised $22 million 'when the money was in fact required to repay investments' and (2) had retained Donaldson, Lufkin & Jenrette as financial consultants. The directors also caused or allowed e4L to engage in improper billing procedures. They did not disclose any of these acts.

"The directors caused one of e4L's subsidiaries to enter into a loan and security agreement under which the subsidiary obtained a $20 million 'credit facility' in exchange for a promise to maintain a minimum net worth of $11.7

million. The directors caused or permitted the subsidiary's net worth to fall below $11.7 million. As a result, the subsidiary defaulted under the agreement.

"e4L acquired a 50 percent interest in BuyItNow.com (BuyItNow), a leading Internet retailer featuring a large selection of brand name products and specialty items. The directors transferred more than $6.5 million from BuyItNow to e4L 'with no invoices [or] management committee consent,' commingled the two companies' funds, failed to hold proper board meetings, '[f]ail[ed] to obtain unanimous board consent on several corporate transactions including stock issuances,' advertised products for BuyItNow 'as seen on TV' when e4L could not fulfill the orders in a timely manner, caused e4L to show a $1.1 million accounts receivable from BuyItNow without providing any accounting or billing information to BuyItNow, and improperly billed BuyItNow 'to manipulate e4L's EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization).' These actions diminished e4L's investment in BuyItNow, exposed e4L to substantial liability, and harmed its reputation and creditworthiness.

"The directors caused or permitted e4L and its subsidiaries to inflate e4L's earnings and net worth artificially by charging customers' credit cards multiple times for a single purchase and by charging customers' credit cards for merchandise e4L did not have in stock. In so doing, the directors violated the 'chargeback' limits of the credit card company.

"e4L attempted to sell its Asian subsidiaries but that effort failed when the directors allowed the subsidiaries to fall significantly off their operating budgets.

"Eventually, e4L lost its ability to fill and ship orders. The directors caused or permitted e4L to sell and transfer its computers to employees for nominal sums." (*Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 113–114 [51 Cal.Rptr.3d 411].)

On or about March 5, 2001, e4L filed for bankruptcy protection under chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.). On or about September 4, 2002, the chapter 11 proceeding was converted to a chapter 7 liquidation (11 U.S.C. § 701 et seq.).

Nancy Hoffmeier Zamora, an attorney, was appointed the chapter 7 trustee of e4L's bankruptcy estate.

As noted, on December 19, 2005, Zamora, as trustee, filed this action against Lehman, Weiss, and Yukelson, alleging a cause of action for breach of fiduciary duty.

## B. *Procedural History*

Lehman and Weiss took one approach to the case—engage in discovery. Yukelson took another—attempt to settle.

### 1. *Lehman and Weiss*

On June 6, 2006, Lehman and Weiss filed a demurrer to the complaint, contending the action was barred by a three-year statute of limitations (§ 359). Zamora argued that a four-year limitations period applied (§ 343). The trial court, Judge William F. Highberger, agreed with Zamora and overruled the demurrer on July 18, 2006. The trial court stayed the action for one month to allow Lehman and Weiss to petition this court for relief. They filed a petition for a writ of mandate. We issued an order to show cause. After briefing and argument, we concluded the trial court had properly applied the four-year statute of limitations and, on November 28, 2006, denied the petition (*Lehman v. Superior Court, supra,* 145 Cal.App.4th 109).

Meanwhile, Lehman and Weiss had served Zamora with a set of form interrogatories and a set of 236 special interrogatories. The two sets of interrogatories sought the identification of every person, document, and fact supporting the allegations in the complaint. Lehman and Weiss also served Zamora with a document demand. She produced over 60,000 documents.

On January 8, 2007, Lehman and Weiss filed a joint answer, generally denying the allegations of the complaint and setting forth 14 affirmative defenses. (See § 431.30, subd. (d).) The answer did not mention arbitration. On the same day, Lehman and Weiss served a cross-complaint on Yukelson, alleging a claim for indemnity.

On June 1, 2007, Lehman and Weiss served Zamora with a "Notice of Deposition of Person Most Knowledgeable [of] the Estate of e4L, Inc." The notice, consisting of 25 pages, listed 159 subjects of inquiry and demanded that the deponent produce all documents on those subjects. The list tracked the allegations of the complaint. In response to the notice, Zamora moved for a protective order, asserting that because e4L was an inactive company, defendants should use special interrogatories in lieu of a deposition. Lehman and Weiss brought a motion to compel the deposition. The trial court granted the motion to compel, denied the motion for a protective order, and imposed sanctions on Zamora in the amount of $2,000. The deposition was set to commence on or before October 5, 2007. Yukelson's attorney, who was attempting to settle the case, requested that the other parties, including Zamora, excuse him from attending the deposition and allow him to question the witness later if a settlement was not reached. They declined the request.

On October 4, 2007, Adrian Stern, a paid consultant and certified public accountant, appeared as the witness at the deposition. The attorneys for Lehman and Weiss questioned Stern but did not finish. The deposition resumed on October 29, 2007. The session began with questions by Yukelson's attorney, who finished in two hours. Counsel for Lehman and Weiss followed with the rest of their questions, completing the deposition.

### 2. *Yukelson*

At the beginning of the case, Yukelson demurred to the complaint for lack of specificity and failure to allege the timeliness of the claim. The demurrer was sustained with leave to amend. After obtaining the ruling and before filing another pleading, Yukelson commenced settlement discussions with Zamora. They reached a settlement, subject to approval by the bankruptcy court, agreeing that the action would be dismissed against Yukelson without his payment of any money in exchange for his granting a five-hour interview with Zamora's attorney. The settlement was reduced to writing, signed by Yukelson and Zamora's attorney, and submitted to the bankruptcy court. On June 23, 2006, while the proposed settlement agreement was pending before that court, Zamora filed a notice of settlement in the trial court.

Over a year later, on September 6, 2007, the bankruptcy court rejected the settlement agreement but indicated it was still amenable to settlement if Yukelson would provide more than five hours of assistance to Zamora. Yukelson entered into renewed settlement negotiations with Zamora's attorney. On November 8, 2007, Zamora indicated she was no longer interested in settlement. Yukelson had not yet filed an answer to the complaint, nor had he served any discovery requests. Trial had been set for April 8, 2008.

### 3. *Motions to Compel Arbitration*

On November 27, 2007, after an inquiry by his attorney, Yukelson located a copy of his employment agreement with e4L. It contained an arbitration provision requiring that all disputes arising out of the agreement be submitted to a panel of three arbitrators and resolved pursuant to the *"labor* arbitration rules of the American Arbitration Association." (Italics added.) The provision also stated that any claim for arbitration "must be presented in writing by the claiming party to the other party within one year of the date the claiming party knew of or should have known of the facts giving rise to the claim . . . [or be] forever barred." The agreement had a choice-of-law clause, as follows: "[T]he validity, interpretation, and legal effect of this agreement shall be governed by the laws of the State of California."

On November 30, 2007, Yukelson filed a motion to compel arbitration and stay the action pending the outcome of arbitration. In a supporting declaration, he stated: "Because more than five years had passed between the time I

left e4L and the time I received notice of this lawsuit, I did not remember any of the terms of my employment agreement." Similarly, Yukelson's attorney did not know that Yukelson had a written employment agreement until November 27, 2007. In the motion, Yukelson argued e4L, while still in business, had been engaged in interstate commerce, and thus the FAA applied. Yukelson asserted that, under the FAA, he had not waived the right to arbitrate because he "had no knowledge of his contractual right to compel arbitration at the time [the] litigation began and only discovered that right [three days ago]."

On December 4, 2007, Lehman and Weiss jointly filed a motion to compel arbitration based on the arbitration provision in their respective employment agreements. That provision was identical to the one in Yukelson's agreement. Lehman and Weiss stated in declarations that they "had forgotten about the arbitration provision in [their] employment agreement[s]" until the week before the motion was filed. They, too, argued the FAA applied and, under the FAA, they had not waived the right to arbitrate because they did not know about the arbitration provision during the litigation.

Zamora filed opposition papers contending the CAA, not the FAA, governed the case and, under the CAA, defendants had waived the right to arbitrate by delay in bringing their motions and by engaging in discovery not available under the arbitration provision. Zamora asserted that the discovery conducted by defendants had prejudiced her ability to pursue the case in arbitration.

The motions to compel were heard on February 14, 2008. At the hearing, the trial court stated e4L had been engaged in interstate commerce, and the FAA was therefore applicable. The trial court found it significant that defendants had forgotten about the arbitration provision until shortly before the motions were filed. To the court, this evidence satisfactorily explained the delay and meant defendants did not engage in bad faith conduct. The trial court also stated that, ordinarily, waiver involves the loss of a known right, and, here, defendants did not know about the arbitration provision during the litigation. Further, according to the court, "the discovery that's been allowed in this case so far is in no way . . . different from the discovery which would likely be allowed by a reasonable arbitrator given the issues in the case." The trial court concluded that the delay in bringing the motions and the discovery conducted by defendants did not prejudice Zamora's ability to present the case in arbitration. By order dated March 17, 2008, the trial court granted defendants' motions to compel arbitration and stay the action.

Zamora filed a petition for a writ of mandate with this court, seeking to overturn the trial court's order. On June 20, 2008, we summarily denied the petition (*Zamora v. Superior Court*, B207858).

In a November 25, 2008 status conference report, Zamora stated that "the remaining funds [did] not permit [her] to . . . commence a costly arbitration before the American Arbitration Association—especially one which requires three arbitrators and the entire cost of which must be borne by the [bank-ruptcy] Estate." The trial court, Judge Mary H. Strobel presiding, issued an order to show cause regarding dismissal for failure to initiate arbitration. A hearing was scheduled for February 23, 2009.

At the hearing, Zamora's counsel acknowledged that Zamora had not initiated arbitration and did not intend to do so. On March 25, 2009, the trial court entered judgment dismissing the case with prejudice. Zamora appealed.

## II

## DISCUSSION

Zamora contends the CAA governs the issue of waiver and, under the CAA, defendants waived the right to arbitrate by delay in bringing the motions to compel arbitration and by engaging in discovery not available under the arbitration provision. Although Zamora does not dispute that e4L was engaged in interstate commerce, she argues the CAA applies by virtue of the choice-of-law clause, which required that the validity, interpretation, and legal effect of the employment agreements be determined under California law.

Defendants counter that the FAA determines the applicable waiver analysis because e4L was engaged in interstate commerce and that, under the FAA, they did not relinquish a known right to arbitrate. For his part, Yukelson maintains that, by participating in settlement negotiations and limiting his discovery to the deposition, he did not engage in conduct inconsistent with the right to arbitrate.

We conclude that the test for determining waiver of the right to arbitrate is the same under the FAA and the CAA. Thus, we do not decide whether the agreements' choice-of-law clause requires the application of the CAA instead of the FAA. Further, the waiver test consists of several factors and does not include whether a defendant voluntarily or intentionally relinquished a known right to arbitrate. We therefore determine that Lehman and Weiss waived the right to arbitrate by delay in bringing their motion to compel arbitration and by engaging in discovery not available under the arbitration provision, resulting in prejudice to Zamora. But Yukelson's ongoing efforts to settle the case and his de minimis participation in discovery were not inconsistent with the right to arbitrate and did not prejudice Zamora.

## A. Standard of Review

■ "While in general arbitration is a highly favored means of settling disputes . . . , it is beyond dispute a trial court may deny a petition to compel arbitration if it finds the moving party has waived that right. . . .

" '[T]he question of waiver is one of fact, and an appellate court's function is to review a trial court's findings regarding waiver to determine whether these are supported by substantial evidence.' . . . 'The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver. . . .' " (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1363 [96 Cal.Rptr.2d 295], citations omitted.)

## B. Waiver of Right to Arbitrate

In *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307 [24 Cal.Rptr.2d 597, 862 P.2d 158], the Supreme Court discussed the concept of waiver in the arbitration context: "[T]he courts of this state have held that the failure to make a timely demand for arbitration results in a 'waiver' of the right to compel arbitration. . . . It is true that . . . some decisions have defined the term 'waiver' as the voluntary relinquishment of a known right. . . . [H]owever, none of the cases concerning the failure to timely demand arbitration have used the word 'waiver' to mean voluntary relinquishment of a known right.

"Federal as well as state courts have used the term 'waiver' to refer to a number of different concepts. . . . Generally, 'waiver' denotes the voluntary relinquishment of a known right. But it can also mean the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right. . . . The term 'waiver' has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost. . . . [¶] . . . [¶]

■ "We have examined the California decisions stating that a party may 'waive' its right to arbitrate by failing to timely demand arbitration. We conclude that those decisions use the word 'waiver' in the sense of the loss or forfeiture of a right resulting from failure to perform a required act. The leading case for the rule that arbitration must be demanded within the time agreed upon by the parties is . . . *Jordan v. Friedman* [(1946)] 72 Cal.App.2d 726 [165 P.2d 728]. Significantly, a review of *Jordan* reveals that the court there did not use the term 'waiver' in the sense of voluntary relinquishment of a known right.

"In *Jordan,* a subcontractor sued a general contractor to foreclose a mechanic's lien. Relying on an arbitration [provision] in the subcontract, the

general contractor filed a motion to stay the proceedings pending arbitration. The parties' subcontract required that a written demand for arbitration be filed with the architect no later than the time of final payment. The general contractor, however, made his demand for arbitration to the subcontractor rather than to the architect, and did so after the time for final payment had expired. The Court of Appeal held that, in failing to make a written arbitration demand to the architect as required by the contract, and in not making the demand until three months after the contractually specified date, the general contractor was foreclosed from compelling arbitration. The court went on to state: 'Where a contract provides that a demand for arbitration must be filed within a stated time and the party desiring arbitration permits the agreed period to pass without making demand, he *waives* his right to arbitration.' . . . It cannot be said of the general contractor in *Jordan* that it intended to voluntarily relinquish its right to arbitration, for it had demanded arbitration both orally and in writing. Thus, the *Jordan* court's use of the term 'waiver' in its holding was simply a shorthand way of stating that, by failing to perform certain acts specified in the parties' contract, the general contractor had lost the right to arbitration." (*Platt Pacific, Inc. v. Andelson, supra*, 6 Cal.4th at pp. 314–316, citations omitted.)

In *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980 [72 Cal.Rptr.2d 43] (*Sobremonte*), the Court of Appeal recognized that "[s]ince arbitration is a strongly favored means of resolving disputes, courts must 'closely scrutinize any claims of waiver.' . . . A party claiming that the right to arbitrate has been waived has a heavy burden of proof." (*Id.* at p. 991, citations omitted.) To resolve the waiver claim before it, the *Sobremonte* court applied a multifactor test used by the Tenth Circuit Court of Appeals under the FAA: "In determining waiver, a court can consider '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. . . .' " (*Sobremonte, supra*, 61 Cal.App.4th at p. 992, original bracketed material, quoting *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467–468.)

In *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*), the Supreme Court addressed a waiver issue where the parties' agreement involved interstate commerce, such that the agreement fell "within the provisions of the FAA."

(*St. Agnes*, at p. 1194.) The court adopted the Tenth Circuit's multifactor test quoted in *Sobremonte* for determining waiver issues under the FAA and the CAA. (See *St. Agnes, supra*, 31 Cal.4th at pp. 1194–1196; *Peterson v. Shearson/American Exp., Inc., supra*, 849 F.2d at pp. 467–468; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30–31 & fn. 10 [58 Cal.Rptr.3d 434, 157 P.3d 1029].) As the court explained in *St. Agnes*, "[T]he FAA provides: 'A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C. § 2.) A district court, upon being satisfied that the issue in controversy is arbitrable, 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.' (9 U.S.C. § 3.)

"In California, section 1281 similarly provides: 'A written agreement to submit to arbitration . . . a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' Section 1281.2 provides in relevant part: 'On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement. . . .' " (*St. Agnes, supra*, 31 Cal.4th at p. 1194.)

 "As mentioned, the FAA permits a party to obtain a stay of judicial proceedings pending arbitration unless such party is 'in default' of that right. (9 U.S.C. § 3.) ' "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." ' . . . Accordingly, a party who resists arbitration on the ground of waiver bears a heavy burden . . . , and any doubts regarding a waiver allegation should be resolved in favor of arbitration . . . .

"Our state waiver rules are in accord. State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. . . . Although a court may deny a petition to compel arbitration on the ground of waiver (§ 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. . . .

"Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration. . . .

"In *Sobremonte*[, *supra*,] 61 Cal.App.4th 980 [72 Cal.Rptr.2d 43] . . . , the Court of Appeal referred to [a test consisting of several] factors . . . . We agree these factors are relevant and properly considered in assessing waiver claims." (*St. Agnes, supra*, 31 Cal.4th at pp. 1195–1196, citations omitted; see Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2009) ¶ 5:179, pp. 5-135 to 5-136 (rev. # 1, 2009) [quoting factors].)

It is not surprising that *St. Agnes* adopted the same waiver test for both the FAA and CAA. " 'In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA]; the similarity is not [unusual], as the two share origins in the earlier statutes of New York and New Jersey.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1343 [82 Cal.Rptr.3d 229, 190 P.3d 586].) "California courts often look to federal law when deciding arbitration issues under state law." (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553 [21 Cal.Rptr.3d 322].)

In *St. Agnes*, the high court also reiterated: "[T]he term 'waiver' has a number of meanings in statute and case law. . . . While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right. . . . In the arbitration context, '[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' " (*St. Agnes, supra*, 31 Cal.4th at p. 1195, fn. 4, citations omitted, quoting *Platt Pacific, Inc. v. Andelson, supra*, 6 Cal.4th at p. 315.)

And the Tenth Circuit—the source of the *St. Agnes* factors—reached the same conclusion about the meaning of "waiver," stating: "[The multifactor test] was not intended to suggest a mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails. Nor were we even suggesting that the list of factors is exclusive. Rather, these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration. . . .

". . . [A] party should not be permitted to demand arbitration when it has previously waived its right to arbitrate in the narrow sense of waiver typically used in the criminal-law context, where a waiver is an 'intentional relinquishment or abandonment of a known right.' . . . A party's conduct may evince such an intentional relinquishment. . . .

"But [the case law] hardly limit[s] the concept of waiver to intentional relinquishment of a known right. Indeed, [in one case involving waiver of the right to arbitrate, we] affirmed the determination of waiver . . . even though the district court had explicitly stated that it could not tell whether the conduct at issue was intentional or negligent." (*Hill v. Ricoh Americas Corp.* (10th Cir. 2010) 603 F.3d 766, 773, citation omitted, discussing *Reid Burton Const. v. Carpenters Dist. Council, Etc.* (10th Cir. 1980) 614 F.2d 698.)

■ *St. Agnes* also discussed the factor of prejudice: "More than two decades ago, we observed that '[u]nder federal law, it is clear that the mere filing of a lawsuit does not waive contractual arbitration rights. The presence or absence of prejudice from the litigation of the dispute is the determinative issue under federal law.' . . . Our review of more recent federal authorities discloses that this rule remains largely intact.

"In California, whether or not litigation results in prejudice also is critical in waiver determinations. . . . That is, while ' "[w]aiver does not occur by mere participation in litigation" ' if there has been no judicial litigation of the merits of arbitrable issues, ' " 'waiver could occur prior to a judgment on the merits if prejudice could be demonstrated.' " ' . . .

"Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. . . .

"Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' . . . Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.

"For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration . . . [or] where a party unduly delayed and waited until the eve of trial to seek arbitration . . . ." (*St. Agnes, supra,* 31 Cal.4th at pp. 1203–1204, citations & fn. omitted.) "[T]he vice [is] in the use of discovery . . . to gain information which defendants could not have gained in arbitration, and [the test does] not

require any further specific showing of how that information disadvantaged the plaintiffs." (*Berman v. Health Net, supra,* 80 Cal.App.4th at p. 1366.)[1]

### 1. *Lehman and Weiss*

We conclude Lehman and Weiss waived the right to arbitrate by delay in bringing their motion to compel arbitration and by engaging in discovery not available under the arbitration provision.

As a preliminary matter, the demurrer, which was based on the statute of limitations, did not affect Lehman's and Weiss's right to arbitrate because that issue could have been properly raised in arbitration. (See *Wagner Construction Co. v. Pacific Mechanical Corp., supra,* 41 Cal.4th at p. 23.) In other words, a statute of limitations defense may be heard in a civil action *or* an arbitration proceeding. Thus, Lehman and Weiss's timeliness argument, presented in the trial court, was not inconsistent with arbitration. (See *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1196–1198 [98 Cal.Rptr.2d 836] [where complaint was vague, defendant did not waive arbitration by bringing demurrers that forced plaintiff to clarify legal theories and identify parties sued].)

But with respect to *when* they moved to compel arbitration, Lehman and Weiss did not act consistently with the right to arbitrate. Such a motion should be brought within a reasonable time. (See, e.g., *Sobremonte, supra,* 61 Cal.App.4th at pp. 992–994 [arbitration waived where motion to compel brought 10 months after service of complaint]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555–556, 558 [94 Cal.Rptr.2d 201] [arbitration waived where motion to compel brought four months after commencement of suit]; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 208 [69 Cal.Rptr.2d 79] [arbitration waived where motion brought 10 months after commencement of suit].) Lehman and Weiss "had the responsibility to 'timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court . . . wasted valuable resources on ordinary litigation.'" (*Sobremonte,* at pp. 993–994.) They filed their motion to compel four months before the trial date and one year after we rejected their statute of limitations defense (*Lehman v. Superior Court, supra,* 145 Cal.App.4th 109). That delay was not reasonable.

---

[1] Several federal courts have held that waiver issues involving litigation conduct should be decided by a court, not an arbitrator. (See *JPD, Inc. v. Chronimed Holdings, Inc.* (6th Cir. 2008) 539 F.3d 388, 394; *Ehleiter v. Grapetree Shores, Inc.* (3d Cir. 2007) 482 F.3d 207, 217–218; *Marie v. Allied Home Mortgage Corp.* (1st Cir. 2005) 402 F.3d 1, 14; but see *National Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.* (8th Cir. 2003) 328 F.3d 462, 466; cf. *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. ___ [177 L.Ed.2d 403, 130 S.Ct. 2772] [where arbitration provision states that arbitrator will determine "enforceability" of agreement, arbitrator, not court, decides whether entire agreement is unconscionable].) The question of *who* decides waiver issues is not before us.

Further, Lehman's and Weiss's failure to remember that their employment agreements contained an arbitration provision does not preclude a finding of waiver. Under *St. Agnes*, courts do not take a defendant's forgetfulness into account: Our Supreme Court held that arbitration may be waived "regardless of the party's intent to relinquish the right [to arbitrate]." (*St. Agnes, supra*, 31 Cal.4th at p. 1195, fn. 4; accord, *Platt Pacific, Inc. v. Andelson, supra*, 6 Cal.4th at pp. 314–316 [waiver of arbitration does not turn on whether defendant voluntarily relinquished known right]; *Hill v. Ricoh Americas Corp., supra*, 603 F.3d at p. 773 [multifactor test governing waiver of right to arbitrate does not include whether defendant intentionally relinquished known right].) In short, Lehman and Weiss " ' "delayed for a long period before seeking a stay [of the action to pursue arbitration]." ' " (*St. Agnes*, at p. 1196.)

Lehman and Weiss also acted contrary to *St. Agnes* by " ' "request[ing] arbitration enforcement close to the trial date." ' " (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) As noted, they filed their motion to compel arbitration four months before that date.

In addition, Lehman and Weiss took " ' " 'advantage of judicial discovery procedures not available in arbitration.' " ' " (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) They served Zamora with extensive discovery—a set of form interrogatories, a set of 236 special interrogatories, and a document demand that resulted in the production of over 60,000 documents—and they deposed the person with the most knowledge about the allegations of the complaint. Under American Arbitration Association (AAA) labor arbitration rules, which the parties adopted in the arbitration provision, neither side was entitled to discovery in an arbitration proceeding. Those rules accord only a right to subpoena witnesses and documents *for the hearing*. (See AAA, Labor Arbitration Rules, rule 28 (eff. Aug. 1, 2007) <http://www.adr.org/sp.asp?id=32599> [as of June 29, 2010].) In contrast, AAA rules governing an "employment" arbitration expressly provide for discovery. (See AAA, Employment Arbitration Rules and Mediation Procedures, rule 9 (eff. Nov. 1, 2009) <http://www.adr.org/sp.asp?id=32904#9> [as of June 29, 2010].) Defendants contend their employment agreements mistakenly incorporated AAA "labor" arbitration rules instead of AAA "employment" arbitration rules. But no evidence was offered to support that contention. And although the "labor" rules apply to an arbitration conducted under a collective bargaining agreement, the AAA would either arbitrate this case under the labor rules or decline to handle the case altogether. The AAA could not arbitrate a case by unilaterally imposing rules different from those adopted by the parties. (See *Alan v. Superior Court* (2003) 111 Cal.App.4th 217, 224–227 [3 Cal.Rptr.3d 377] [where parties' agreement stated that arbitration would be conducted under rules of particular service provider, and provider declined to accept case, dispute had to be adjudicated in court]; *Hussein v. Hafner & Shugarman Ents., Inc.* (2008) 176 Ohio App.3d 127 [2008 Ohio 1791,

890 N.E.2d 356, 363–364] [where parties' agreement stated that arbitration would be conducted "in accordance with the 'Building Industry Association of Central Ohio arbitration rules,' " and no such rules existed, arbitration clause was voidable]; *Ex Parte Mountain Heating and Cooling, Inc.* (Ala. 2003) 867 So.2d 1112, 1114–1118 (per curiam) [where parties' contract mistakenly stated that arbitration would be conducted under AAA " 'Construction Industry Mediation Rules' " instead of " 'Construction Industry Arbitration Rules' " (italics omitted), trial court erred in granting defendant's motion to compel arbitration].)[2]

Further, Lehman and Weiss " ' "filed a counterclaim [against Yukelson] without asking for a stay of the proceedings [to pursue arbitration]." ' " (*St. Agnes, supra,* 31 Cal.4th at p. 1196.) By seeking to have their cross-complaint adjudicated in court, Lehman and Weiss acted inconsistently with the right to arbitrate.

█ Last, the undue delay in bringing the motion to compel arbitration, together with the discovery conducted by Lehman and Weiss, resulted in prejudice to Zamora. "[Because of defendants'] use of the discovery process, [Zamora] has disclosed at least some of [her] trial tactics to [defendants], certainly more so than would have been required in the arbitral arena. Through [defendants'] delay . . . [Zamora] has lost whatever efficiencies that would otherwise have been available to [her] through arbitration. Simply put, ' "[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration." ' " (*Guess?, Inc. v. Superior Court, supra,* 79 Cal.App.4th at p. 558; see *St. Agnes, supra,* 31 Cal.4th at p. 1204 [discussing prejudice]; *Berman v. Health Net, supra,* 80 Cal.App.4th at p. 1366 [same]; *Sobremonte, supra,* 61 Cal.App.4th at pp. 995–996 [same].) It does not matter that Lehman and Weiss may have acted in good faith. (See *Berman v. Health Net,* at p. 1372.)

Thus, Zamora satisfied the heavy burden of proving Lehman and Weiss waived the right to arbitrate. The trial court's order granting their motion to compel arbitration was not supported by substantial evidence.

### 2. *Yukelson*

We conclude Yukelson did not waive the right to arbitrate because he attempted to settle the action and participated in an insignificant amount of discovery initiated by other parties. Zamora did not prove waiver as to him.

---

[2] Here, defendants do not contend that discovery was available under the CAA. (See §§ 1283.05, 1283.1.) Rather, they argue the FAA governs this case. We therefore do not address whether the CAA provided a right to discovery.

Yukelson demurred to the complaint on the grounds it lacked specificity and failed to allege the timeliness of the claim. That was not inconsistent with the right to arbitrate. (See *Groom v. Health Net, supra*, 82 Cal.App.4th at pp. 1196–1198; *Wagner Construction Co. v. Pacific Mechanical Corp., supra*, 41 Cal.4th at p. 23.)

After learning his demurrer to the complaint had been sustained, Yukelson entered into settlement negotiations with Zamora. He continued his efforts to settle the case until November 8, 2007, when Zamora indicated she was no longer interested in settlement. Three weeks later, Yukelson filed a motion to compel arbitration.

 Yukelson's attempt to settle the action was not inconsistent with the right to arbitrate and did not result in undue delay. "Offers to settle, like arbitration, are to be favored, as they encourage the amicable and quick settlement of suits outside the judicial system." (*Walker v. J.C. Bradford & Co.* (5th Cir. 1991) 938 F.2d 575, 578; accord, *Dickinson v. Heinold Securities, Inc.* (1981) 661 F.2d 638, 641.)

With respect to discovery, Yukelson's participation was limited to questioning a deposition witness for two hours—only after the other parties, including Zamora, had declined his request to be excused from the deposition while reserving his right to question the witness later if his settlement efforts ultimately failed. Such de minimis discovery, initiated by other parties and conducted after a reasonable attempt to avoid it, cannot be characterized as " ' " '*taking advantage* of judicial discovery.' " ' " (*St. Agnes, supra*, 31 Cal.4th at p. 1196, italics added.)

Finally, Yukelson did not engage in any conduct that was prejudicial to Zamora's ability to pursue the case in arbitration.

### 3. *Waiver of Arbitration and Choice of Law*

In *Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.* (2007) 152 Cal.App.4th 1522 [62 Cal.Rptr.3d 396] (*Aviation Data*), the parties' agreement contained an arbitration provision and a choice-of-law clause. The arbitration provision stated it was governed by the FAA. The choice-of-law clause stated that *the agreement* was governed by New York law. In deciding whether the defendant had waived the right to arbitrate, the Court of Appeal held that the FAA, not New York law, was controlling because the reference to the FAA in the arbitration provision was more specific than the reference to New York law in the choice-of-law clause. (*Aviation Data*, at pp. 1534–1535.)

In concluding the defendant had waived the right to arbitrate, the *Aviation Data* court observed, "The *trial court* cited [a federal district court decision]

for the federal rule governing whether the right to arbitrate is lost by participating in litigation: 'To prove that a waiver of arbitration exists, a party must demonstrate "(1) *knowledge of an existing right to compel arbitration*; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." . . .' . . . The California rule on such a litigation waiver is in accord." (*Aviation Data, supra*, 152 Cal.App.4th at p. 1537, italics added, citations omitted, citing *St. Agnes, supra*, 31 Cal.4th at p. 1195.) But in its analysis, the Court of Appeal made no mention of whether the defendant had " ' "knowledge of an existing right to compel arbitration." ' " (*Aviation Data*, at p. 1537; see *id.* at pp. 1538–1542.)

Here, defendants rely on *Aviation Data* for the proposition that, under the FAA, we must consider their knowledge of the right to arbitrate or, more accurately, their lack of knowledge of the arbitration provision. Yet in *Aviation Data*, the trial court, not the Court of Appeal, relied on that circumstance. And as we have already discussed, the *St. Agnes* factors do not include whether a defendant knew about the arbitration provision. (See pt. IIB., *ante.*)

Zamora urges us to hold that, under the choice-of-law clause in defendants' employment agreements, the waiver issue should be resolved under the CAA, not the FAA. But as noted, the *St. Agnes* factors apply under both acts. (See pt. IIB., *ante*; *St. Agnes, supra*, 31 Cal.4th at pp. 1194–1196; *Peterson v. Shearson/American Exp., Inc., supra*, 849 F.2d at pp. 467–468.) As a result, we do not decide whether the parties' choice-of-law clause displaced the FAA.

We acknowledge that the Eighth and Ninth Circuits consider whether a defendant knew that the parties' agreement contained an arbitration provision. (See, e.g., *U.S. v. Park Place Associates, Ltd.* (9th Cir. 2009) 563 F.3d 907, 921; *Hooper v. Advance America, Cash Advance Centers, MO* (8th Cir. 2009) 589 F.3d 917, 920.) Nevertheless, in *St. Agnes*, our Supreme Court adopted the waiver test used by the Tenth Circuit. (See *St. Agnes, supra*, 31 Cal.4th at p. 1196; *Sobremonte, supra*, 61 Cal.App.4th at p. 992; *Peterson v. Shearson/American Exp., Inc., supra*, 849 F.2d at pp. 467–468.) And the test adopted in *St. Agnes* is substantially similar to the test adopted by *most* federal circuits, which do *not* consider whether a defendant knew about the arbitration provision. As explained by one authority: " '[I]n determining whether [a party] has waived its right to arbitration, [the courts] will consider such factors as (1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice. The factors are viewed cumulatively, rather than in isolation.' " (Schwartzberg & Mellen,

*Think the Right to Arbitrate Has Been Waived? Think Again!* in Practising Law Inst. Corporate Law & Prac. Course Handbook Series (2008) 1686 PLI/Corp. 283, 287, fn. & italics omitted; see Note, *Waiver of a Contractual Arbitration Agreement by Causing Prejudice to the Opponent: Should Federal Courts Adopt a Bright-Line Test?* (1992) 1992 J. Disp. Resol. 175, 180–187 [in determining whether arbitration has been waived, Eighth and Ninth Circuits, but no other circuits, consider defendant's knowledge of arbitration provision]; Note, *To Waive or Not to Waive: New York and Federal Law on Waiver of the Right to Compel Arbitration* (1999) 43 N.Y.L. Sch. L.Rev. 609, 620–622, 624–627 [discussing tests used by federal courts to determine whether party waived right to arbitrate under FAA]; Forsythe, *The Treatment [of] Arbitration Waivers Under Federal Law* (2000) 55-MAY J. Disp. Resol. 8 [discussing waiver tests adopted by federal circuits].)

## C. Judgment of Dismissal

The trial court, Judge Mary H. Strobel presiding, dismissed the case with prejudice after ordering Zamora to initiate arbitration and then allowing her sufficient time to do so. Zamora candidly admitted she had no intention of arbitrating the case. She stood on her right to have the case heard in court and preserved her right to challenge the order compelling arbitration. But neither the record nor the law supports Zamora's contention that she could avoid arbitration because she could not afford it. The trial court did not err in dismissing the case to the extent Zamora should have pursued arbitration.

As noted, under *St. Agnes*, Lehman and Weiss waived the right to arbitrate. The trial court therefore erred in granting their motion to compel arbitration. It follows that Zamora's claim against them should be resolved in court. The order and judgment must be reversed as to Lehman and Weiss. But Yukelson did not waive the right to arbitrate. Accordingly, the trial court properly granted his motion to compel arbitration; the judgment of dismissal was properly entered as to him because Zamora refused to pursue arbitration; and the order and judgment in his favor must be affirmed.

# III

## DISPOSITION

The order and judgment are reversed as to defendants Stephen C. Lehman and Eric R. Weiss, and on remand the trial court shall restore this case to the civil active list as to them. The order and judgment are affirmed as to defendant Daniel M. Yukelson. Plaintiff Nancy Hoffmeier Zamora is entitled to costs on appeal from defendants Stephen C. Lehman and Eric R. Weiss.

Defendant Daniel M. Yukelson is entitled to costs on appeal from plaintiff Nancy Hoffmeier Zamora. Defendants Stephen C. Lehman and Eric R. Weiss are to bear their own costs on appeal.

Rothschild, J., and Johnson, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 29, 2010, S185321.