Filed 8/16/23  Guerin v. IRA Services CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| LESLIE GUERIN,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>IRA SERVICES, INC., et al.,<br><br>　　　Defendant and Appellant. | A165949<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-20-587975) |

Leslie Guerin sued her former employer, IRA Services, Inc. (IRA) and its owner, Forge Global, Inc., in this California action, alleging that defendants retaliated against her for blowing the whistle on their financial wrongdoing.  The complaint alleges that IRA is also known as IRA Services Trust Company and Forge Trust Company.

Defendants moved to compel arbitration pursuant to the terms of an agreement Guerin signed during her employment.  Before the trial court ruled on the motion, Forge Trust Company sued Guerin in South Dakota on the ground Guerin's complaint in the California action disclosed confidential information.

The trial court denied defendants' motion to arbitrate, concluding that they waived their right to arbitrate the California action by litigating the South Dakota action against Guerin.  On appeal, Defendants argue that

1

Forge Trust Company is a separate entity from the parties to the California action and that defendants did not engage in any conduct that waived their right to arbitrate the employment-related dispute in California. Unpersuaded, we affirm.

## BACKGROUND

### I. Allegations of the Complaint

Guerin brought this action against IRA and Forge Global, Inc. in November 2020. She alleges that Forge Global, Inc. is a technology company that in 2019 acquired IRA, an entity licensed and regulated by the South Dakota Division of Banking as a trust company (Credential No. TC.037-2), with a trust officer located at 401 East 8th Street, Suite 222, Sioux Falls, South Dakota. IRA "is an investment company that enables investors to use their retirement account funds to invest in real estate, private equity and other non-exchange traded assets," according to the complaint, and is also known as IRA Services Trust Company and, after the 2019 acquisition, as Forge Trust Company.

Guerin began working for IRA in February 2013, with duties that included reviewing investment contracts to ensure they were complete and complied with state and federal regulations.

In 2018, the South Dakota Division of Banking issued a report identifying irregularities in IRA's activities and placing its banking license on a regulatory watch list. These irregularities, according to the complaint, included performing trust company activities out of state in violation of South Dakota law; irregularities with custodial cash management; lack of oversight of self-directed IRA's to prevent fraud and prohibited transactions; and missing and inaccurate annual asset valuations. A few months later the South Dakota Division of Banking entered into an agreement with IRA that

2

set out requirements for mitigating the violations and required quarterly progress updates through July 11, 2019.

During that period, as part of her duties Guerin began to notice and flag a number of regulatory violations, including incomplete accounts, prohibited transactions, and missing valuations. She continued to document numerous regulatory violations in 2019, unaware that the sorts of irregularities she found were the subject of the South Dakota Division of Banking's report. Guerin alerted managers and officers of the company— including defendants' vice president, Patrick Hughes—of these illegal and prohibited transactions and notified the company's board of directors. She alleges she was told not to document improprieties and was subjected to retaliation in the form of problematic work assignments, reprimands, criticism, negative performance reviews, and lower-than-normal pay raises, and she suffered workplace stress.

In November 2019, shortly after the acquisition of IRA was finalized, Guerin was placed on administrative leave, allegedly in retaliation for her complaints, and on April 1, 2020 her employment was terminated.

Based on these alleged events, Guerin asserted causes of action for Labor Code violations, retaliation, wrongful termination, disability discrimination, failure to accommodate disability, and intentional infliction of emotional distress.

## II. Motion to Compel Arbitration

*The Arbitration Agreement*

Shortly after Guerin filed her complaint, she served discovery on Defendants. Rather than responding to Guerin's discovery requests, on December 24, 2020 Defendants moved to compel arbitration. The motion was based on an agreement Guerin signed during her employment to arbitrate

3

"any dispute arising out of or relating to . . . your employment with your company," as well as any dispute with its "employee, officer, or director."[1]

*The South Dakota Complaint and Discovery Requests*

The hearing on the motion to compel arbitration did not take place until June 17, 2022. In the meantime, the parties engaged in several rounds of briefing. In her fourth (and final) supplemental opposition, filed June 6, 2022, Guerin argued that defendants had filed what she characterized as a cross-complaint against her in South Dakota and had actively litigated the case. In so doing, Guerin argued, defendants waived their right to arbitrate their California dispute with her.

In the South Dakota action, filed May 20, 2021, Forge Trust Company alleged it was chartered by the State of South Dakota and regulated by the South Dakota Division of Banking, with a principal place of business at 401 E. 8th Street, Suite 222, Sioux Falls, South Dakota. The complaint alleged that Guerin had access to confidential and propriety information and documents belonging to Forge Trust Company through her former employment with "a company providing service support to Plaintiff"; that Guerin wrongfully obtained access to confidential regulatory information and documents relating to Forge Trust Co. and belonging to the South Dakota Division of Banking; that some of this information was provided to Guerin in

---

[1] This provision is found in an agreement with a company called TriNet, a service provider that apparently had IRA as a client. The agreement recited that its dispute resolution procedures covered disputes arising out of a signatory's employment with TriNet or, if the employee worked for one of TriNet's customers, arising out of employment with that company. Although Guerin contended in her opposition to the motion to arbitrate that defendants are not entitled to the benefit of the agreement with TriNet, she does not repeat that contention on appeal. For purposes of this appeal only, we will assume the agreement would apply to this dispute in the absence of waiver.

4

violation of a former employee's fiduciary duty to plaintiff; and that in the California action Guerin disclosed confidential information. Forge Trust Company asserted causes of action for violation of South Dakota's Trade Secrets Act, aiding and abetting breach of fiduciary duty, conversion, and invasion of privacy, and it sought injunctive and declaratory relief as well as damages.

Discovery propounded by Forge Trust Company in the South Dakota action included a subpoena for Guerin's attorneys in the California action to produce documents and information relating to the South Dakota Division of Banking investigation and reports referred to in the California complaint. It also included interrogatories and document requests to Guerin regarding the Division of Banking information referred to in the California complaint. One of the interrogatories asked Guerin to "[i]dentify whether any factual allegations contained in the [California] Complaint are inaccurate and, if so, explain the inaccuracies." And Guerin and two others were ordered to testify at an evidentiary hearing that "related solely to the litigation in this California court," according to Guerin's attorney.

*Hearing and Ruling on Motion to Compel Arbitration*

In their reply to Guerin's fourth supplemental opposition, defendants argued that the mere filing of a separate lawsuit does not waive the right to arbitrate a dispute and that it was not clear the South Dakota action was an employment-related dispute subject to the arbitration clause. At the hearing on the motion, they argued for the first time that Forge Trust Company was a separate entity, not a party to the California action and not Guerin's employer, and that defendants in the California action could not be charged with Forge Trust Company's actions in pursuing discovery in South Dakota. Guerin suggested that if the court determined Forge Trust Company was not

5

a party to this action, she could amend her complaint to substitute the company for one of the Doe defendants.

The trial court in the California action denied Defendants' motion to compel arbitration. The court determined that Defendants waived their contractual right to arbitration, labeling the South Dakota action a "cross-complaint" and citing the "extensive discovery" that had occurred in that action. It concluded that "Defendants have not merely invoked the litigation machinery; they have almost completed most of the work the machine is supposed to do." This timely appeal ensued.

## DISCUSSION

### I. Legal Standards

On petition of a party "alleging the existence of a written agreement to arbitrate a controversy," a court "shall order the [parties] to arbitrate" the matter if it determines the agreement to arbitrate exists. (Code Civ. Proc., § 1281.2.) But if the court determines that the petitioner has waived the right to compel arbitration, it may refuse to enforce the arbitration agreement. (Code Civ. Proc., § 1281.2, subd. (a).)

"Although 'no single test delineates the nature of the conduct that will constitute a waiver of arbitration,' the California Supreme Court has identified the following factors as relevant for consideration: ' " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether

6

important intervening steps [e.g. taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party,' " ' " as might occur when the petitioning party uses judicial discovery processes to gain information that could not have been gained in arbitration. (*Spracher v. Paul M. Zagaris, Inc.* (2019) 39 Cal.App.5th 1135, 1138, quoting *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*); see also *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375, 377 (*Iskanian*), abrogated on other grounds in *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906, 1924.) This test " 'was not intended to suggest a mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails. Nor . . . [is] the list of factors . . . exclusive. Rather, these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration.' " (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 15 (*Zamora*).)

As to the sixth factor, whether the delay prejudiced the party opposing arbitration, the United States Supreme Court has recently held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the [Federal Arbitration Act (FAA)]"; rather, the operative question is whether the defendant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." (*Morgan v. Sundance, Inc.* (2022) 142 S.Ct. 1708, 1714 (*Morgan*); see *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 966–967 (*Davis*).) Following *Morgan*, the court in *Davis* concluded that "prejudice therefore is no longer required to demonstrate a waiver of one's

right to arbitration, and the waiver inquiry should instead focus on the actions of the holder of that right."[2] (*Davis*, at p. 966.)

The parties agree, as do we, that the proper standard of review here is substantial evidence. "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) Where, as here, the facts or the inferences that may be drawn from them are in dispute, we review the trial court's order for substantial evidence. (See *Davis*, *supra*, 84 Cal.App.5th at pp. 962–963.)

Finally, "an order challenged on appeal 'is presumed correct and all intendments and presumptions are indulged to support the order on matters to which the record is silent. It is appellant's burden to affirmatively demonstrate error.' " (*Cochran v. Rubens* (1996) 42 Cal.App.4th 481, 486.)

## II. The Trial Court Properly Denied the Motion to Compel Arbitration

Defendants contend they have not taken any actions that waive their right to arbitration. Specifically, defendants argue they promptly sought arbitration of this dispute and have engaged in no discovery apart from arbitration-related discovery ordered by the trial court. But this argument rests largely on their position that Forge Trust Company is a separate entity and its litigation-related activities in South Dakota are irrelevant to

---

[2] The question of the continuing importance of prejudice to waiver under California law is presented in a case pending before our high court. (*Davis*, *supra*, 84 Cal.App.5th at p. 966, fn. 5, citing *Quach v. California Commerce Club, Inc.* (2022) 78 Cal.App.5th 470, rev. granted Aug. 24, 2022, S275121.) However, the arbitration agreement before us specifies that the Federal Arbitration Act applies. As a result, "federal law supplies the law on waiver in this case." (*Davis*, at p. 964.)

defendants' right to seek arbitration in *this* action. The trial court implicitly found otherwise.

**A. Relationship of Forge Trust Company to Defendants**

For their contention that Forge Trust Company has no role in the California action, defendants rely primarily on a declaration filed by Patrick Hughes in support of the motion to compel arbitration. Hughes averred that he is the senior vice president of defendant Forge Global, Inc. as well as the president and chairman of "Forge Trust Company, formerly known as IRA Service Trust Company." According to Hughes, IRA Services, Inc. "provided administrative support services" to IRA Services Trust Company. Forge Global, Inc. acquired both IRA Services Trust Company and IRA Services, Inc. in late 2019, and changed the name of IRA Services Trust Company to "Forge Trust Company." This evidence, defendants contend, establishes that Forge Trust Company is a different entity than either Forge Global, Inc. or IRA Services, Inc., the named defendants in this action, and they are therefore not accountable for Forge Trust Company's actions in the South Dakota case.[3]

On the unusual facts of this case, we conclude substantial evidence supports the trial court's finding otherwise. First, Guerin's complaint identifies Forge Trust Company as an alias of IRA Services, Inc., identifies an address for that defendant that corresponds to Forge Trust Company's address in South Dakota, alleges that entity is credentialed by the South Dakota Division of Banking as a trust company, and provides the credential

---

[3] We note with dismay, given defendants' acute reliance on the Hughes declaration, that they chose not to even mention this evidence until they filed their reply brief. (See *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 799.)

number.  Defendants do not dispute that the number belongs to Forge Trust Company in South Dakota.

Consistent with these facts, "Forge Trust, Co." has regularly submitted pleadings in the California action.  The January 14, 2021 reply to Guerin's opposition to the motion to compel was filed on behalf of "FORGE GLOBAL, INC. and FORGE TRUST, CO. (formerly known as IRA SERVICES, INC.)," as was a supplemental brief in support of the motion, filed March 19, 2021.  And interrogatory responses were provided on behalf of "Defendant FORGE TRUST, CO., FORMERLY KNOWN AS IRA SERVICES, INC."  Indeed, even in their response to the opposition in which Guerin argued defendants waived arbitration through the South Dakota action, defendants did not contend Forge Trust Company had no role in this action.  Not until the hearing on the motion to compel arbitration did defendants argue Forge Trust Company is not a party to this action.

Further undercutting defendants' suggestion that Forge Trust Company, formerly IRA Services Trust Company, has nothing to do with Guerin's employment or this action, the record includes Guerin's personnel file, which she averred was provided to her by defendants' counsel in response to her prelitigation request.  The accompanying letter from defendants' then-counsel states that the firm "has been retained to represent IRA Services Trust Company" in response to the demand letter.  Of note here, the letter offering Guerin a position with IRA Services, Inc. is written on the letterhead of "IRA Services Trust Company" and signed by "Michael McNair, Trust Officer."  The file also includes a confidentiality agreement reciting that "IRA Services, Inc. and IRA Services Trust Company (jointly 'IRA Services')" had confidential information and requiring Guerin to keep that information "during and after [her] employment with IRA Services."

10

From the record before it, the trial court could reasonably conclude that Forge Trust Company is not a stranger to this action, or at least that the companies are so intertwined in the context of this litigation that Forge Trust Company's actions in the South Dakota lawsuit may properly be attributed to defendants in the California action.

**B. Waiver of Right to Arbitration**

Defendants contend, however, that even if the court considers the South Dakota action, they have not waived their right to arbitrate the California dispute. The trial court found otherwise, determining that the factors set forth in *St. Agnes* and *Iskanian* "weigh heavily in favor of waiver." Substantial evidence supports this finding.

Defendants briefly argue that the proceedings in South Dakota are not inconsistent with the right to arbitrate in California because the South Dakota action contains nonarbitrable claims. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1202 [arbitration not denied when party seeking arbitration initiated separate lawsuit with nonarbitrable causes of action].) But the arbitration agreement here is broad and all inclusive, covering "any dispute arising out of or relating to [Guerin's] employment with" IRA. (See *Nixon v. AmeriHome Mortgage Co.*, *LLC* (2021) 67 Cal.App.5th 934, 947; *Rice v. Downs* (2016) 248 Cal.App.4th 175, 186–187; see also *Eminence Healthcare, Inc. v. Centuri Health Ventures*, *LLC* (2022) 74 Cal.App.5th 869, 876.) The South Dakota complaint is based almost entirely on Guerin's conduct in connection with the California action—an action that is intimately tied to her employment—and it is based in part on information she allegedly received through her employment. And Forge Trust Company sought discovery regarding the accuracy of *all* factual allegations in the California complaint.

11

Defendants are in no position now to argue that the South Dakota claims neither relate to nor arise out of Guerin's employment.

The trial court could also properly find that the litigation machinery was substantially invoked and the parties were well into the preparation of the South Dakota lawsuit, through hearings, sharing of confidential information, and discovery requests that the trial court characterized as "voluminous." Defendants do not dispute this characterization. The trial court additionally found it was not clear discovery of this confidential information—an " 'important intervening step[]' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196)—would have been available in arbitration, and defendants do not argue otherwise.

Defendants argue that bringing the South Dakota action did not amount to "fil[ing] a counterclaim without asking for a stay of the proceedings." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) But in our view the question is not whether the trial court was correct to characterize that action as a "cross-complaint" for purposes of this *St. Agnes* factor. The factors are not to be applied mechanically, but rather " 'reflect certain principles' " to guide courts in determining whether arbitration has been waived. (*Zamora*, *supra*, 186 Cal.App.4th at p. 15.) The trial court could reasonably conclude that the South Dakota action, which arose out of the events underlying the California complaint and led to discovery that focused extensively on the California action, fell within the ambit of this "principle[]." (See *ibid.*)

Finally, while prejudice may not be necessary to our analysis in light of *Morgan*, *supra*, 142 S.Ct. at p. 1714, the trial court could also properly find this factor satisfied. Specifically, Forge Trust Company brought a separate action in state court in South Dakota predicated on Guerin's conduct in the California action and subjected her to extensive discovery seeking

12

information about the California dispute, depriving her of the benefit of efficiencies and cost-savings associated with arbitration. (See *McMillin Development, Inc. v. Home Buyers Warranty* (1998) 68 Cal.App.4th 896, 910; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 452.)

Defendants point out correctly that our high court ruled in *Iskanian* that mere participation in litigation, with its attendant expenses, does not establish prejudice (*Iskanian, supra,* 59 Cal.4th at pp. 376–377), but this principle does not assist them. In *Iskanian*, the parties engaged in litigation while class arbitration was foreclosed by existing law; when a later change in the law permitted it, the defendant promptly sought arbitration. (*Id.* at pp. 361, 377–378.) This *reasonable* delay in seeking arbitration did not result in a waiver. (*Id.* at pp. 377–378.) *Iskanian* does not hold that the economic efficiencies of arbitration may never be taken into account in evaluating prejudice.

Thus, the record supports the trial court's finding that the *St. Agnes* factors weigh in favor of waiver. Defendants have not shown that the trial court erred in denying their motion to compel arbitration.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed. Respondent to recover costs on appeal.


TUCHER, P.J.


WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.


*Guerin v. IRA Services, Inc., et al.* (A165949)

13