Filed 7/22/13  Harvey v. Yellowpages.Com CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GEORGE THOMAS HARVEY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> YELLOWPAGES.COM et al., <br><br> Defendants and Appellants. | B239733 <br><br> (Los Angeles County <br> Super. Ct. No. BC465779) |

        APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed in part and reversed in part with directions.

        Paul, Plevin, Sullivan & Connaughton, Michael C. Sullivan, Noam Glick and Michael J. Etchepare for Defendants and Appellants.

        Gleason & Favarote, Paul M. Gleason and Janet S. Yavrouian for Plaintiff and Respondent.

_____

The primary question presented by this appeal is whether defendants' petition to compel arbitration was properly denied on the ground that defendants had waived the right to arbitration. We conclude defendants did not waive that right because their delay in demanding arbitration and their participation in the litigation process did not result in prejudice to plaintiff.

# I

# BACKGROUND

The allegations and facts in this appeal are taken from the pleadings and the papers filed in connection with defendants' petition to compel arbitration.

## A.    Complaint

On July 20, 2011, plaintiff George Thomas Harvey filed this action against his former employer, Yellowpages.com, and his former supervisor, Dennis Sly. One month later, plaintiff filed a first amended complaint. It alleged as follows.

Plaintiff began working for Yellowpages.com on or about July 10, 2006, as a senior systems specialist. As its name suggests, Yellowpages.com operated a Web site. Plaintiff's duties included monitoring the company's Web site for "issues" and taking corrective action. He worked the graveyard shift from 12:00 a.m. to 8:30 a.m., Monday through Friday. He was an exemplary employee and performed his duties in a diligent and thorough manner.

Plaintiff was regularly required to work more than five hours per day without a meal period and without one hour of additional pay for each workday that a meal period was not provided. Yellowpages.com deducted a 30-minute meal period from each of plaintiff's shifts even though he did not receive a meal period. As a result, plaintiff was underpaid for at least 30 minutes each workday. Nor was plaintiff allowed to take a legally mandated rest period, and Yellowpages.com did not compensate him with one additional hour of pay for each workday that a rest period was not provided. Yellowpages.com also failed to comply with state law requiring the payment of overtime compensation.

Yellowpages.com did not give plaintiff an itemized wage statement that accurately listed the number of hours he had worked, the time period covered by the wage statement, the name of the legal entity for which he worked, or the hourly pay rates in effect during the pay period. The failure to provide proper wage statements made it difficult for plaintiff to determine if he had been paid the correct amount.

On or about February 2, 2011, plaintiff was suffering from an ear infection and had a temperature of around 103.6 degrees. Plaintiff's wife contacted his supervisor, Dennis Sly, by telephone and told Sly she was taking plaintiff to the hospital. That same day, plaintiff was admitted to Presbyterian Community Hospital in Whittier, California. He was treated for pneumonia and was released from the hospital on or about February 11, 2011. Plaintiff promptly made an appointment to see his primary care physician, who recommended that he not return to work until February 21, 2011. Plaintiff's wife faxed a doctor's note to Sly. Plaintiff used five sick days and two weeks of vacation time to cover the three weeks he was not at work.

After plaintiff returned to work, Sly told him on several occasions, "'It must be nice for some people to take three weeks off for vacation.'" Sly began to blame plaintiff for "missing issues" on the company's Web site when the errors were actually the fault of another, younger employee.

Eventually, plaintiff went to the human resources department and complained about not being able to take meal and rest periods. Plaintiff explained that even though he was not provided with a meal period, he was required to clock out and in as if he had taken one. If plaintiff failed to clock out and in, Sly would "write in a thirty (30) minute lunch for Plaintiff." The director of human resources told Sly that plaintiff was entitled to take a meal period away from his desk and without having to perform his duties during the 30-minute period. Notwithstanding the director's instructions, Sly reprimanded plaintiff if he "did not catch an issue" on the Web site during his meal period. Consequently, plaintiff spent his meal period at his desk, monitoring the Web site and handling any issues that arose during that time.

After plaintiff complained about his inability to take meal and rest periods, Sly "criticized Plaintiff's work constantly." Sly would often direct plaintiff to "'take care'" of some additional work after plaintiff had clocked out at the end of the workday. Plaintiff would work the extra time, and, as instructed by Sly, would "'put [the time] on another day'" to avoid the payment of overtime compensation.

On or about May 2, 2011, Yellowpages.com terminated plaintiff's employment, indicating that the termination was based on plaintiff's unsatisfactory performance. As alleged, "In reality, Plaintiff was terminated because of his disability/medical condition and taking protected leave, having made complaints to [the human resources department] for not being provided meal periods and rest breaks and his age." Plaintiff was 53 years old when he was discharged.

The complaint contained 18 causes of action: (1) retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900–12996); (2) retaliation for complaining about violations of state wage and hour laws (Lab. Code, §§ 98.6, subd. (a), 1102.5, subds. (a)–(e), 6310, subd. (a)); (3) age discrimination in violation of the FEHA; (4) harassment based on age in violation of the FEHA; (5) harassment based on plaintiff's medical leave in violation of the FEHA; (6) violation of the Moore-Brown-Roberti Family Rights Act (Gov. Code, §§ 12945.1, 12945.2, 19702.3); (7) failure to prevent discrimination in violation of the FEHA; (8) failure to prevent harassment in violation of the FEHA; (9) wrongful termination in violation of public policy; (10) failure to pay compensation in accordance with designated wage scales and overtime compensation laws (Lab. Code, §§ 223, 510, 1194); (11) failure to provide meal periods (*id.*, §§ 226.7, 512); (12) failure to provide rest periods (*id.*, § 226.7); (13) failure to provide itemized wage statements (*id.*, § 226); (14) failure to pay all wages when due (*id*., §§ 204, 223); (15) failure to maintain accurate payroll records (*id.*, §§ 226, 1198); (16) failure to pay "waiting time" penalties (*id.*, § 203); (17) violation of the California Unfair Competition Law (Bus. & Prof. Code, §§ 17200–17210); and (18) violation of the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, §§ 2698–2699.5).

4

Plaintiff did not serve the original complaint on Yellowpages.com or Sly. The first amended complaint (complaint) was served on Yellowpages.com and Sly (defendants) on September 22, 2011, by way of a notice and an acknowledgement of receipt. Defendants filed an answer on October 24, 2011. According to plaintiff, the answer did not mention arbitration.

## B.    Procedural History

On October 7, 2011, before defendants had filed their answer, plaintiff served them with discovery requests, including two demands for the production of documents, two sets of special interrogatories, and a set of form interrogatories. For their part, defendants served plaintiff with discovery requests on October 26, 2011, including special interrogatories and a document demand. By mutual agreement, the parties extended the deadlines for serving their respective discovery responses: Plaintiff's deadline was extended to January 3, 2012, and defendants' deadline was extended to December 22, 2011.

Defendants served plaintiff with a deposition notice, setting his deposition for December 1, 2011. The deposition was later rescheduled for January 12, 2012.

On October 24, 2011, defendants served and filed their "Case Management Statement." In the statement, defendants' attorney, Noam Glick, represented that he was "completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required." Item 10.c. on the statement read: "Indicate the [alternative dispute resolution] process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information)." (Italics omitted.) Defendants responded to item 10.c. by checking the boxes for mediation and a settlement conference. They did not check the box for "Binding private arbitration."

5

The parties appeared in the trial court on November 8, 2011, for a case management conference. The trial court set a trial date of May 7, 2012—around seven and one-half months after defendants had been served with the summons and complaint. During the conference, defendants' attorney did not inform plaintiff's counsel or the trial court of the existence of an arbitration agreement mandating the arbitration of plaintiff's causes of action. At the time of the conference, defendants' attorney did not know that such an agreement existed.

In mid-December 2011, while gathering documents and preparing responses to plaintiff's discovery requests, defendants' attorney learned for the first time that when plaintiff was hired on July 10, 2006, he executed an arbitration agreement requiring both parties to submit employment-related disputes to binding arbitration before the American Arbitration Association (AAA) in accordance with AAA rules governing employment disputes. On December 22, 2011, defendants' attorney sent plaintiff a letter by overnight delivery, requesting that plaintiff stipulate to arbitration. In relevant part, the letter stated: "Please be advised that in the course of locating and reviewing the documents requested by your discovery, we discovered that Mr. Harvey agreed to submit any dispute arising from his employment to binding arbitration (see arbitration agreements in his enclosed personnel file . . .). The arbitration agreement is unquestionably valid under California law, and therefore, Mr. Harvey is contractually obligated to proceed in arbitration.

"In light of the foregoing, please let us know if Mr. Harvey will stipulate to stay the pending lawsuit and submit this matter to arbitration. We would like to hear from you on or before December 30, 2011—i.e., before any further written discovery is due, and before Mr. Harvey's scheduled deposition on January 12, 2012. Of course, the discovery conducted to date is all consistent with any discovery that would have been conducted in arbitration. However, if you believe that plaintiff's responses to any of the discovery propounded by Yellowpages.com would prejudice him if served prior to the commencement of arbitration, please let us know and we can meet and confer on this issue."

Attached to the December 22, 2011 letter was a partial copy of the arbitration agreement. On December 28, 2011, defendants' attorney had the arbitration agreement rescanned and e-mailed a complete copy of the agreement to plaintiff's counsel.

Defendants' attorney received plaintiff's discovery responses on January 6, 2012. Before that date, plaintiff's counsel did not request to meet and confer regarding whether the service of the responses would prejudice plaintiff if the case were ordered to arbitration.

On January 9, 2012, at 7:37 p.m., plaintiff's counsel e-mailed defendants' attorney, stating that plaintiff would not stipulate to arbitration and would oppose a petition to compel arbitration on the grounds that his PAGA claim was not subject to arbitration, and defendants had waited too long to raise the arbitration issue.

On January 10, 2012, at 9:00 a.m., defendants' attorney instructed his legal assistant to contact the trial court and reserve the first available date for a petition to compel arbitration. The clerk of court assigned a hearing date of February 29, 2012. Under Code of Civil Procedure section 437c, subdivision (a), which governs summary judgment and summary adjudication motions, the last day to hear such a motion in this case was April 7, 2012—30 days before the May 7, 2012 trial date. The moving papers had to be served 75 days before the April 7, 2012 hearing deadline if served personally and by 80 days if served by mail. Thus, a summary judgment or summary adjudication motion had to be served no later than January 23, 2012, if served personally and no later than January 18, 2012, if served by mail. Regardless of the method of service, the deadline for serving a summary judgment or summary adjudication motion would expire around one month before the trial court would hear defendants' petition to compel arbitration.

By telephone conversation on January 10, 2012, defendants' attorney requested that plaintiff's counsel stipulate to a continuance of the trial date so the trial court could rule on the petition to compel arbitration before defendants filed any potentially dispositive motions.

7

As of January 12, 2012, plaintiff's counsel had not contacted defendants' attorney about continuing the trial date. On the same day, around 8:30 a.m., defendants filed an ex parte application in the trial court, seeking a continuance of the trial date to sometime on or after June 29, 2012, and a stay of the litigation pending a ruling on the petition. Plaintiffs filed an opposition to the ex parte application, arguing that a PAGA claim was not subject to arbitration, thereby rendering the entire arbitration provision unconscionable, and defendants had waived the right to arbitration by delaying their request for arbitration. The trial court denied defendants' ex parte application to continue the trial date.

Defendants proceeded to take plaintiff's deposition on January 12, 2012. On or about January 20, 2012, defendants served and filed a motion for summary adjudication. After the motion was filed, plaintiff propounded several additional discovery requests, noticed depositions, and filed motions to compel discovery responses. On February 15, 2012, plaintiff filed a motion for leave to file a second amended complaint, which asserted a new (19th) cause of action—a violation of the Moore-Brown-Roberti Family Rights Act (Gov. Code, §§ 12045.1, 12945.2, 19702.3)—against a new defendant, AT&T Services, Inc.

As it turned out, plaintiff never filed an opposition to defendants' summary adjudication. And the trial court did not hear defendants' motion for summary adjudication, plaintiff's motions to compel discovery responses, or plaintiff's motion to file a second amended complaint.

### C.     Motion to Compel Arbitration

On February 3, 2012, defendants filed a petition to compel arbitration of plaintiff's causes of action. Defendants asserted that they had not waived the right to arbitration, the arbitration agreement was not unconscionable, and the PAGA claim did not affect the enforceability of the arbitration agreement.

Plaintiff filed an opposition on February 15, 2012, arguing that the petition should be denied because (1) defendants had waived the right to arbitration, (2) the PAGA claim was not subject to arbitration, and (3) there was a possibility of conflicting rulings under

8

the proposed second amended complaint because AT&T Services, Inc., a new party to the lawsuit, was not a party to the arbitration agreement (see Code Civ. Proc., § 1281.2, subd. (c)).

On February 29, 2012, the trial court heard the petition to compel arbitration. At the hearing, the court allowed both sides to present argument. During the hearing, the trial court commented that "[t]he funny thing about arbitration is that it's designed to be a less expensive and more expeditious process. In my experience, which is many years, not just on the bench, . . . it costs more and takes longer." The court then denied the petition on the ground that defendants' actions—conducting discovery and filing a motion for summary adjudication—constituted a waiver of the right to arbitration. The court formally denied the petition by order dated March 6, 2012. Defendants appealed.

## II

## DISCUSSION

Plaintiff contends the trial court properly denied defendants' petition to compel arbitration in its entirety because defendants waived the right to arbitration. Plaintiff also asserts that his claim under the PAGA is not subject to arbitration. Finally, plaintiff argues that arbitration should be denied altogether given that, under the proposed second amended complaint, there is a possibility of conflicting rulings because a new party to the lawsuit—AT&T Services, Inc.—is not a party to the arbitration agreement.

We conclude that the trial court erred in denying the petition to compel arbitration in its entirety. Defendants did not waive the right to arbitration because they did not engage in any conduct that resulted in prejudice to plaintiff. Further, the trial court properly denied the petition as to the PAGA claim because the PAGA confers benefits on the public and is therefore not subject to arbitration. Finally, plaintiff's argument regarding the possibility of conflicting rulings is premature because the trial court has not yet ruled on whether plaintiff may file the proposed second amended complaint.

### A.      Waiver of Right to Arbitration

"Whether a party waived the right to contractual arbitration is a factual question we review under the substantial evidence standard of review. . . . The trial court's

9

'determination of this factual issue, "'if supported by substantial evidence, is binding on an appellate court.'" . . . Only "'in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court.'" . . .' . . . .

"We infer all necessary findings supported by substantial evidence . . . and 'construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance' . . . . [¶] . . . [¶]

"Federal and state laws reflect a strong public policy favoring arbitration as ""'a speedy and relatively inexpensive means of dispute resolution.'"" . . . Nonetheless, federal and California courts may refuse to enforce an arbitration agreement 'upon such grounds as exist at law or in equity for the revocation of any contract,' including waiver. . . . Based on the public policy favoring arbitration, claims of waiver receive 'close judicial scrutiny' and the 'party seeking to establish a waiver bears a heavy burden.' . . .

"'Although the statute[s and case law] speak[ ] in terms of "waiver," the term is used "'as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'" . . . This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have "waived" its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act.'" (*Lewis v. Fletcher Jones Motor Cars, Inc*. (2012) 205 Cal.App.4th 436, 443–444, citations omitted.)

"'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had

taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)

"In California, whether or not litigation results in prejudice . . . is critical in waiver determinations. . . . That is, while '"[w]aiver does not occur by mere participation in litigation"' if there has been no judicial litigation of the merits of arbitrable issues, '"'waiver could occur prior to a judgment on the merits if prejudice could be demonstrated.'"' . . .

"Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. . . .

"Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect '"a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution"' and are intended '"to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing."' . . . Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.

"For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration . . . ; where a party unduly delayed and waited until the eve of trial to seek arbitration . . . ; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence . . . ." (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1203–1204, citations omitted; accord, *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 13–17.) "'[T]he vice [is] in the use of discovery . . . to gain information which defendants could not have gained in arbitration, and [the test does] not require any further specific showing of how that information disadvantaged the plaintiffs.'" (*Zamora*, at pp. 16–17.) Put another way, in the absence of prejudice to the

11

plaintiff, a court will not find that the defendant waived the right to arbitration regardless of how the other *St. Agnes* factors are resolved. "The presence or absence of prejudice from the litigation is a determinative issue." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205.)

Here, we conclude as a matter of law that plaintiff was not prejudiced by defendants' delay in demanding arbitration or their participation in litigation. We reach this conclusion for several reasons.

First, defendants made their demand for arbitration four months after the complaint was filed and three months after it was served. Although defendants' ignorance of the parties' arbitration agreement would not excuse an unreasonably long delay (see *St. Agnes*, *supra,* 31 Cal.4th at p. 1195, fn. 4; *Zamora v. Lehman*, *supra*, 186 Cal.App.4th at pp. 12–16, 20–22), the delay in this case was not unreasonable. In the majority of cases finding waiver, the demand for arbitration was made more than four months after the filing of the complaint or more than three months after service of the complaint. (See, e.g., *Hoover v. American Income Life Ins. Co.*, *supra*, 206 Cal.App.4th at pp. 1199–1200 [11 months between filing lawsuit and demand for arbitration]; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 338–339 [six and one-half months between filing lawsuit and date plaintiff first sought arbitration]; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1446, 1449, 1451–1452 [six months between filing lawsuit and demand for arbitration]; *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1193 [more than 11 months between service of complaint and demand for arbitration]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228–1229 [approximately five and one-half months between filing lawsuit and date defendant first raised arbitration issue].)

Second, when defendants first demanded arbitration—by letter dated December 22, 2011—plaintiff had not yet served his responses to defendants' discovery requests. The deadline for plaintiff's responses was January 3, 2012. Plaintiff's deposition was set for January 12, 2012. In their December 22, 2011 letter to plaintiff, defendants stated: "We would like to hear from you [about stipulating to arbitration] on

12

or before December 30, 2011—i.e., before any further written discovery is due, and before Mr. Harvey's scheduled deposition on January 12, 2012. Of course, the discovery conducted to date is all consistent with any discovery that would have been conducted in arbitration. *However, if you believe that plaintiff's responses to any of the discovery propounded by Yellowpages.com would prejudice him if served prior to the commencement of arbitration, please let us know and we can meet and confer on this issue.*" (Italics added.)

Plaintiff did not respond to defendants' request to stipulate to arbitration until *after* he served his discovery responses. Thus, plaintiff voluntarily decided to serve his discovery responses notwithstanding defendants' offer to meet and confer to address any prejudice that might arise from those responses. Further, defendants' discovery requests—special interrogatories and document demands—and plaintiff's deposition would have been permitted in an arbitration proceeding. As provided by the AAA rules for employment disputes: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (AAA Employment Arbitration Rules and Mediation Procedures, rule No. 9 (Nov. 1, 2009), available online at <http://www.adr.org/aaa/faces/rules/searchrules> [as of July 22, 2013].) It is also noteworthy that defendants sought to avoid taking plaintiff's deposition by filing an ex parte application to continue the trial date and stay the action until after their petition to compel arbitration could be heard. But plaintiff filed an opposition to the requested continuance and stay. The trial court ruled in plaintiff's favor, denying defendants' ex parte application.

Nor was plaintiff prejudiced by the filing of defendants' motion for summary adjudication. Plaintiff never filed an opposition to that motion because the trial court denied the petition to compel arbitration, and defendants filed this appeal. In any event, defendants would have been permitted to bring a summary adjudication motion in arbitration. Under AAA rules, the arbitrator may hear "dispositive motions." (AAA

Employment Arbitration Rules and Mediation Procedures, rule No. 27 (Nov. 1, 2009), available online at <http://www.adr.org/aaa/faces/rules/searchrules> [as of July 22, 2013].)  In addition, the summary adjudication motion actually benefitted plaintiff:  It disclosed defendants' possible trial tactics—information that would be useful to plaintiff in presenting his case to an arbitrator.

Finally, plaintiff did not lose "whatever efficiencies that would otherwise have been available through arbitration."  (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558.)  In the present case, the efficiencies were to be found in court:  Plaintiff served the complaint on September 22, 2011, and at a case management conference on November 8, 2011, the trial court set trial for May 7, 2012.  The trial court observed based on years of experience, arbitration "costs more and takes longer" than a civil action.  Nor can it be said that defendants "waited until the eve of trial to seek arbitration" or that the delay in seeking arbitration "resulted in lost evidence."  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.)

The present case is factually similar to the circumstances in *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462.  There, the plaintiff filed suit against her former employer, alleging statutory causes of action under the FEHA and a common law cause of action for wrongful termination in violation of public policy.  The Court of Appeal rejected the plaintiff's contention that the employer had waived the right to arbitration, explaining:  "[Plaintiff] Roman contends [that her former employer,] Flo-Kem[,] engaged in conduct inconsistent with arbitration:  Not only did Flo–Kem, without mentioning arbitration, file a demurrer and serve objections to discovery requests, but also, a few weeks after it filed its motion to compel arbitration, Flo–Kem served and filed a motion in superior court to compel Roman's deposition, asserting in that motion it intended to 'file a motion for summary judgment immediately upon gathering the story underlying Plaintiff's claims.'  Roman insists Flo–Kem's conduct prejudiced her, forcing her to both bring and oppose motions that would not have been necessary had Flo–Kem sought arbitration in a timely fashion.

14

"Although Roman's argument may be superficially appealing, the facts she presents are not sufficiently compelling to demonstrate a waiver. . . . Flo–Kem filed its notice of petition to compel arbitration a little more than two months after Roman filed her complaint.  At the time, no substantive discovery responses had been served by either side, and no formal hearings had taken place on the discovery issues.  Moreover, the discovery requests Flo–Kem served (a set of form interrogatories and a request for production of documents) were authorized under the AAA rules; thus the discovery sought (although not received) did not seek to take advantage of discovery tools unavailable in arbitration. . . .

"Although Roman incurred litigation expenses in serving and filing objections to discovery requests and opposing the demurrer and motion to compel her deposition, those expenses are insufficient, by themselves, to support a finding of waiver:  ""[W]aiver does not occur by mere participation in litigation'" if there has been no judicial litigation of the merits of arbitrable issues' and no prejudice." (*Roman v. Superior Court*, *supra*, 172 Cal.App.4th at pp. 1478–1479, citations omitted.)

In sum, defendants' delay in demanding arbitration and their participation in litigation did not result in prejudice to plaintiff.  Thus, defendants did not waive their right to arbitration.

## B.     Arbitration of PAGA Claim

We do not write on a clean slate in determining whether plaintiff's PAGA claim is subject to arbitration.  As we have previously explained:  "The Legislature has made clear that an action under the PAGA is in the nature of an enforcement action, with the aggrieved employee acting as a private attorney general to collect penalties from employers who violate labor laws.  Such an action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct. Restitution is not the primary object of a PAGA action, as it is in most class actions. Before the PAGA was enacted, an employee could recover damages, reinstatement, and other appropriate relief but could not collect civil penalties.  The Labor and Workforce Development Agency (LWDA) collected them.  The PAGA changed that. . . .

15

"... 'The [PAGA] provides in relevant part ... : *"Notwithstanding any other provision of law,* any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the [LWDA] or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, *may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees ....*" ...

"'... [T]he [PAGA] empowers or deputizes an aggrieved employee to sue for civil penalties "on behalf of himself or herself and other current or former employees" ... as an alternative to enforcement by the LWDA.

"'The Legislature declared its intent as follows: "... Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future. [¶] ... *It is therefore in the public interest to provide that civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general*, while also ensuring that state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken pursuant to this act." ...

"'The final bill analysis for the [PAGA] states: "This bill allows employees to sue their employers for civil penalties for employment law violations. *This bill is intended to augment the enforcement abilities of the Labor Commissioner by creating an alternative 'private attorney general' system for labor law enforcement.*" ...

"'The final bill analysis explains: "Existing law authorizes the [LWDA] ... to assess and collect civil penalties for violations of the Labor Code, where specified. [¶] Existing law authorizes the Attorney General and other public prosecutors to pursue misdemeanor charges against violators of specified provisions of the code. [¶] Existing law authorizes an individual employee to file a claim with the Labor Commissioner alleging that [the] employer has violated specified provisions of the code, and to sue the employer directly for damages, reinstatement, and other appropriate relief if the Commissioner declines to bring an action based on the employee's complaint.

16

[¶] Existing law further provides that any person acting for itself, its members, or the general public, may sue to enjoin any unlawful, unfair, or fraudulent business act or practice, and to recover restitution and disgorgement of any profits from the unlawful activity. [¶] This bill is entitled the 'Labor Code Private Attorneys General Act of 2004,' *and establishes an alternative 'private attorney general' system for labor law enforcement that allows employees to pursue **civil penalties** for employment law violations.*'" . . . When a plaintiff employee recovers a civil penalty under the PAGA, *75 percent is distributed to the LWDA 'and 25 percent to the aggrieved employees.'* . . . The PAGA defines 'aggrieved employee' as 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.'" (*Franco v. Athens Disposal Co., Inc*. (2009) 171 Cal.App.4th 1277, 1300–1301, citations omitted, some italics added.)

In *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, the Second District Court of Appeal, Division Five, held that the Federal Arbitration Act does not mandate the arbitration of PAGA claims because, unlike a typical arbitration, which resolves a private dispute between the parties, a PAGA claim benefits the public by recovering civil penalties from employers who violate California wage and hour laws, as codified in the Labor Code. (See *Brown*, at pp. 499–503.) The court in *Brown* held that, in light of this public benefit, an arbitration agreement prohibiting class actions and representative actions was unenforceable, thereby permitting the PAGA claim to be heard in a judicial forum. As *Brown* pointed out: "In . . . *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 [(*Broughton*)] . . . , the California Supreme Court held that statutory consumer *monetary claims*, as contrasted with *claims for injunctions* [under the Consumer Legal Remedies Act (CLRA) (Civ. Code, §§ 1750–1784)], were arbitrable. In *Broughton*, the court said that because 'the evident purpose of the *injunctive relief* provision of the CLRA is not to resolve a private dispute but to remedy *a public wrong*' . . . , a claim for *injunctive relief* under the CLRA *is not arbitrable. . . . Broughton* . . . dealt with arbitrability, not with class and representative action waivers. . . . [T]he PAGA was enacted as means to enforce the Labor Code and penalize violators of that code

17

'during California's ongoing budget crisis' and 'to remedy the understaffing of California's labor law enforcement agencies by granting employees the authority to bring civil actions against their employers for Labor Code violations.'" (*Brown*, at pp. 500–501, italics added.)

More recently, in *Brown v. Superior Court* (2013) 216 Cal.App.4th 1302, the Sixth District Court of Appeal addressed "whether the Federal Arbitration Act . . . permits arbitration agreements to override the statutory right to bring representative claims under the [PAGA]." (*Id.* at pp. 1308–1309.) The Court of Appeal concluded: "[T]he FAA does not demand enforcement of such an agreement. A plaintiff suing for PAGA civil penalties is suing as a proxy for the state. A PAGA claim is necessarily a representative action intended to advance a predominately public purpose." (*Id.* at p. 1309.) As the Court of Appeal recognized: "[A]ny statute providing a *private* remedy that may be effectively adjudicated in the arbitral forum must be arbitrated if that is what the parties have agreed to do. But . . . [no] United States Supreme Court case of which we are aware[] has held that the [Federal Arbitration Act] requires enforcement of a private agreement that wholly prevents the exercise of a statutory right intended for a predominantly *public purpose*." (*Id.* at p. 1320, italics added.) "It follows that the PAGA claim must be excluded from the order compelling arbitration and stayed pending resolution of the arbitration." (*Id.* at p. 1323.)

We agree with the reasoning of both *Brown* decisions and *Broughton* and therefore conclude that the trial court properly denied the petition to compel arbitration as to the PAGA claim—not because defendants waived the right to arbitration but because a PAGA claim confers benefits on the public and is therefore not subject to arbitration. Defendants distinguish the *Brown* decisions on the ground that in both of those cases, the arbitration agreements expressly prohibited class actions and representative actions, while the arbitration agreement in this case contains no such prohibition. This is a distinction without a difference. The *Brown* decisions conclude that a PAGA claim is not subject to arbitration because, unlike a typical arbitration, which resolves a *private* dispute, the PAGA imposes civil penalties for Labor Code violations and thus benefits the public.

18

*Broughton* reached the same conclusion with respect to injunctive relief under the CLRA. Thus, pending the outcome of arbitration, the trial court shall stay the civil action as to the PAGA claim. After arbitration is completed, the trial court shall adjudicate that claim.

## C. Possibility of Conflicting Rulings

Plaintiff argues that under the proposed second amended complaint, AT&T Services, Inc., will become a party to this litigation, and it is not a party to the arbitration agreement. According to plaintiff, the cause of action against AT&T Services, Inc., will therefore be adjudicated in court and may lead to rulings that conflict with the arbitration award.

We conclude that this argument is premature. The trial court has not ruled on plaintiff's motion to file a second amended complaint. Unless the trial court grants the motion to amend, there is no possibility of conflicting rulings: AT&T Services, Inc., will not become a party to this litigation. If, at some point, the trial court grants plaintiff's motion to file a second amended complaint, the trial court will then be faced with the question of whether the arbitration of one or more of plaintiff's causes of action may give rise to conflicting rulings and, as a result, whether particular causes of action—in addition to the PAGA claim—should not be arbitrated. (See Code Civ. Proc., § 1281.2, subd. (c); *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 180.)

19

### III

### DISPOSITION

The order denying defendants' petition to compel arbitration is reversed as to all of plaintiff's causes of action with the exception of the cause of action under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, §§ 2698–2699.5). As to the cause of action under the PAGA, the order is affirmed. On remand the trial court shall stay the action as to the PAGA cause of action, which shall be adjudicated by the court after arbitration is completed. Defendants are entitled to costs on appeal.

NOT TO BE PUBLISHED.


                                        MALLANO, P. J.

I concur:


    JOHNSON, J.

Rothschild, J., concurring and dissenting:

I would affirm the trial court's determination that defendants waived their right to compel arbitration. I therefore concur in the judgment insofar as it affirms, although on a different ground, the denial of the petition to compel arbitration with respect to the claim under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, §§ 2698-2699.5), but I dissent from the majority's reversal of the rest of the superior court's order. I would affirm the order in its entirety and on the same ground (waiver) relied on by the trial court.


ROTHSCHILD, J.