Filed 9/25/15  Hilton v. Allcare Medical Management, Inc. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VIVIAN HILTON, | B253984 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC413288) |
| v. | |
| ALLCARE MEDICAL MANAGEMENT, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward Ferns and Richard Fruin, Judges.  Affirmed as modified.

The Mirroknian Law Firm, Reza Mirroknian, Pedram A. Javanmardi; The Law Offices of Stephen M. Benardo and Stephen M. Benardo for Plaintiff and Appellant.

Levinson, Arshonsky & Kurtz, James S. Cooper for Defendants and Respondents.

_____

Plaintiff Vivian Hilton appeals from a judgment confirming an arbitration award in favor of Hilton's former employer, defendant Allcare Medical Management, Inc. (AMMI), and Hilton's former manager, defendant Marie McKenzie (collectively, defendants). Hilton challenges both the order compelling arbitration and the arbitration award. Rejecting each of Hilton's arguments to the contrary, we conclude the trial court properly ordered the matter to arbitration. With respect to the arbitration award, we agree with Hilton's contention the arbitrator exceeded her authority by awarding costs against Hilton while she was under bankruptcy protection. We correct the judgment confirming the arbitration award by striking the cost order. In all other respects, we affirm.

## BACKGROUND

**Hilton's Employment With AMMI**

In 1989, AMMI's predecessor, Family Planning Associates Medical Group (FPA), hired Hilton to work in one of its clinics as a receptionist. Sixteen years later, in 2005, when AMMI's principal acquired FPA, Hilton was still working for FPA, but as a treatment coordinator in a different clinic. In this position, Hilton interacted with patients regarding scheduling, medical testing and billing, and also performed other front desk clerical office work.

On or about September 26, 2005, Hilton submitted an employment application in order to retain her employment at the medical clinic then managed by AMMI. She stated in the application the highest level of education she had completed was tenth grade in high school. The employment application included an arbitration agreement covering "claims arising out of the submission of this application." Hilton initialed the arbitration clause and signed the bottom of the application on the same page as the arbitration clause.[1]

---

[1] She signed the application "Vivian Gascon," the name she was using at the time she submitted the employment application and commenced her employment with AMMI.

**The Arbitration Agreement**

Hilton retained her position at the medical clinic. As a new employee, AMMI asked Hilton to sign an arbitration agreement. On October 31, 2005, Hilton signed the one and one-half page agreement, entitled "Allcare Medical Management, Inc. Dispute Resolution Policy" (DRP). The DRP states:

"1. This Policy applies to any employment-related dispute between an Employee and Allcare Medical Management, Inc. ('AMMI') or any of AMMI's agents or Employees, whether initiated by an Employee or by AMMI. This Policy requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Policy or the employment relationship and disputes about trade secrets, unfair competition, compensation, termination, or harassment and claims arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, and state statutes, if any, addressing the same subject matters, and all other state statutory and common law (excluding workers compensation claims). Except as provided in this section, **arbitration shall be the exclusive method for resolving any employment-related dispute, and both the Company and the employee are giving up any right that they might otherwise have to have a judge or jury decide any such employment-related dispute;** [original bold] provided, however, that either the employee or the Company may request equitable relief, including but not limited to injunctive relief, from a court of competent jurisdiction.

"2. This Policy is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The neutral arbitrator shall be selected by mutual agreement of each party to each individual claim for relief from an association or listing of arbitrators or retired judges in the general geographical vicinity of the place where the dispute arose or where the Employee last worked for AMMI. The location of the arbitration proceeding shall be in the general geographical vicinity of the place where the dispute arose or where the Employee last worked for AMMI, unless each party to the arbitration agrees in writing

3

otherwise. Nothing in this Policy shall be deemed to preclude an Employee from filing or maintaining a charge with the Equal Employment Opportunity Commission or the Department of Fair Employment and Housing.

"3. A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. Any demand made to AMMI shall be provided to: 3050 Airport Way, Long Beach, CA 90806.

"4. In arbitration, the parties will have the right to conduct civil discovery and bring motions, as provided by the Federal Rules of Civil Procedure. However, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, private attorney general, or in a representative capacity on behalf of any person.

"5. Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, AMMI will pay the arbitrator's and arbitration fees. If under applicable law AMMI is not required to pay the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between each set of adverse parties by the arbitrator.

"6. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in a court of law. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

"7. This Policy is the full and complete policy relating to the formal resolution of employment-related disputes.

4

"MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS."  (Original caps.)

Hilton and AMMI's president signed the agreement on October 31, 2005.

## The Dispute[2]

On or about January 1, 2007, McKenzie, the manager of the clinic where Hilton worked, promoted Hilton to the position of assistant manager of the clinic.

In July 2007, after a hysterectomy, Hilton took a medical leave of absence from AMMI.  In October 2007, after Hilton exhausted her 12 weeks of family and medical leave and was not prepared to return to work, AMMI placed her on inactive status and notified her it was not obligated to keep her position open.  At that point, Hilton's gynecologist indicated she was disabled from work due to fatigue and depression.  The gynecologist signed a certificate stating Hilton could return to work on November 29, 2007.

In November 2007, Hilton filed a workers compensation claim against AMMI stating she had psychological trauma and related injuries.  As of June 2008, the doctor she saw in connection with her workers compensation claim indicated she was psychologically disabled and unable to return to work.

On or about August 1, 2008, Hilton obtained employment as a case assistant at another medical company.  About one month later, that company terminated her employment for performance reasons.

## Hilton's Lawsuit

In February 2008, Hilton's counsel sent a letter to AMMI stating Hilton had retained counsel "in connection with a potential civil claim for damages arising out of her employment with your company."  Hilton's counsel requested a copy of Hilton's personnel file and payroll records.  On March 28, 2008, Jody Landry, an attorney from

---

[2] These facts are taken from the final arbitration award.  There is no indication Hilton disputes any of these facts.

Littler Mendelson, the law firm representing AMMI, sent Hilton's counsel a letter attaching "payroll records as well as copies of documents that she [Hilton] signed during the course of her employment." According to Hilton's counsel, the DRP Hilton signed was one of the documents Landry forwarded.

On May 6, 2009, Hilton filed this employment action against AMMI and McKenzie in superior court, asserting five causes of action alleging violations of the Fair Employment and Housing Act (FEHA)[3] (disability discrimination, retaliation, failure to accommodate disability, failure to engage in the interactive process, and failure to prevent discrimination), two causes of action alleging Labor Code violations (failure to pay statutorily mandated wages and failure to provide adequate meal and rest periods), one cause of action alleging violations of the Unfair Competition Law[4] (unfair business practices), as well as causes of action for wrongful termination in violation of public policy and intentional infliction of emotional distress. Hilton asserted all 10 causes of action against AMMI, but only asserted one cause of action against McKenzie for intentional infliction of emotional distress.

On August 7, 2009, McKenzie filed a demurrer to the cause of action for intentional infliction of emotional distress, and AMMI filed an answer to the complaint. Attorneys from Littler Mendelson, including Jody Landry and David Dow, represented AMMI and McKenzie. In its answer, AMMI asserted 37 affirmative defenses, but did not assert Hilton was required to arbitrate the dispute.

On September 16, 2009, David Dow, attorney from Littler Mendelson, sent a letter to Hilton's counsel stating, while reviewing Hilton's personnel file from AMMI, attorneys at the law firm discovered an arbitration agreement Hilton signed. Dow attached to his letter the October 31, 2005 DRP Hilton signed. He asserted, "My office was not previously aware of the existence of the agreement." Dow stated AMMI

---

[3] Government Code section 12900 et seq.

[4] Business and Professions Code section 17200 et seq.

6

intended to enforce the arbitration agreement and requested Hilton stipulate to arbitrate her case against AMMI and McKenzie. Dow explained McKenzie would take her demurrer off calendar and proceed to arbitration.

On or about September 22, 2009, Hilton propounded form interrogatories and requests for production of documents to AMMI. The next day, September 23, 2009, Hilton's counsel sent a letter to attorney Dow stating Hilton would not agree to arbitrate her case against AMMI and McKenzie. In the letter, Hilton's counsel asserted AMMI and McKenzie waived their right to compel arbitration and the DRP was unenforceable because it was "'permeated' by unconscionability." Hilton's counsel listed the provisions of the arbitration agreement he believed were substantively unconscionable (allowing only claims for equitable and injunctive relief to proceed in court, disallowing arbitration of class action and private attorney general claims, and requiring confidentiality of the arbitration).

On or about October 7, 2009, the parties filed a stipulation requesting the trial court allow Hilton to file a first amended complaint in response to McKenzie's demurrer rather than requiring Hilton to file a motion for leave to file a first amended complaint. In the stipulation, the parties also requested the court take off calendar the hearing on McKenzie's demurrer. The trial court issued an order in accordance with the parties' stipulation.

On October 7, 2009, Hilton filed a first amended complaint against AMMI and McKenzie. She added a cause of action against AMMI for failure to provide timely and accurate wage statements in violation of the Labor Code. Otherwise, she asserted the same causes of action she had asserted in her original complaint, as set forth above.

On or about November 6, 2009, AMMI served its responses to Hilton's discovery and produced documents to Hilton. On November 12, 2009, AMMI and McKenzie each filed an answer to the first amended complaint, asserting as an affirmative defense, among others, that Hilton's claims were barred because they were subject to an arbitration agreement.

Four days later, on November 16, 2009, defendants filed a motion to compel arbitration and to stay the trial court proceedings. Defendants referenced the DRP as well as the arbitration clause in the employment application Hilton signed. Defendants argued Hilton's claims were covered by the DRP, and the DRP was not unconscionable.

Hilton filed an opposition to the motion to compel arbitration, arguing the DRP was unenforceable because it was unconscionable (for the reasons listed in her counsel's September 23, 2009 letter and set forth above), and severance of provisions was an improper remedy because there were too many unlawful provisions. Hilton also asserted the arbitration provision in her employment application was unconscionable because it called for arbitration under the commercial rules of the American Arbitration Association which required the claimant to advance the initial filing fee. Finally, Hilton argued defendants waived their right to arbitrate because they "litigated until they felt their advantage would be better served in arbitration."

After hearing oral argument, allowing the parties to submit further briefing, and taking the matter under submission, the trial court (Judge Edward Ferns) granted defendants' motion to compel arbitration on March 15, 2010. In its minute order, the court rejected all but one of Hilton's arguments. With respect to that one argument, the court ruled: "As to the cost provision, it is appropriately severed and the arbitration agreement otherwise enforced." Presumably the court was referring to the arbitration clause in the employment application because Hilton did not argue there was an unconscionable cost provision in the DRP. The court ordered defendants "to pay the costs and fees associated with the arbitration proceeding consistent with [*Armendariz*]."[5]

**The Arbitration**

On June 25, 2010, Hilton filed a demand for arbitration before JAMS (Judicial Arbitration and Mediation Services). Justice Candace D. Cooper (ret.) was appointed arbitrator pursuant to the parties' stipulation. During the five-day arbitration hearing

---

[5] *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*).

8

(held November 7-11, 2011), 11 witnesses testified, and two depositions and 60 other exhibits were received into evidence. Both sides filed post-arbitration briefs before the matter was submitted.

On February 13, 2012, the arbitrator issued a 38-page interim award in favor of defendants and against Hilton, concluding Hilton did not prove any of her causes of action. The arbitrator invited the parties to schedule another hearing or submit briefs in lieu of a hearing on the issue of attorney fees and costs.

On or about March 29, 2012, Hilton filed a Chapter 13 bankruptcy case. On or about April 10, 2012, defendants filed with the trial court and served on the arbitrator a document entitled "Notice of Plaintiff's Bankruptcy Filing and Automatic Stay."

As the arbitrator explained in the final award, dated August 14, 2013: "In February 2013, the Arbitrator received a request to resume the arbitration proceedings. The parties briefed the issue whether the automatic stay barred the resumption of the arbitration. The arbitrator concluded that proceeding [to] conclude the arbitration would not violate the stay. Thereafter the parties briefed the issue of attorneys' fees and costs. [¶] On or about June 6, 2013, Respondents [defendants] served their Motion for Attorneys' Fees After Arbitration with supporting declarations and exhibits. Respondents also filed a Memorandum of Costs under CCP § 1033.5."

In the final award, the arbitrator denied defendants' request for attorney fees under the Labor Code and awarded defendants $15,166.37 in costs as the prevailing parties. The final award was consistent with the interim award in its conclusions that Hilton did not prove any of her causes of action and should take nothing against defendants.

On October 31, 2013, Hilton filed a motion to vacate or correct the final award and defendants filed a petition to confirm it. In her motion, Hilton argued the "arbitrator exceeded her powers in awarding costs against Hilton due to her bankruptcy status." She also argued the trial court erred in granting defendants' motion to compel arbitration because the DRP was procedurally and substantively unconscionable and defendants waived their right to arbitrate. Hilton made other arguments that we do not address because she does not raise them on appeal. Hilton opposed defendants' petition to

9

confirm the award and defendants opposed Hilton's motion to vacate or correct the award.

After hearing oral argument, the trial court (Judge Richard Fruin) denied Hilton's motion to vacate or correct the final award and granted defendants' petition to confirm the final award. The court entered judgment in favor of defendants in the amount of $15,166.37 (the cost award).

## DISCUSSION

Hilton contends the trial court erred in compelling arbitration because (1) the arbitration agreement is procedurally and substantively unconscionable and therefore unenforceable, (2) defendants waived their right to arbitrate, and (3) the cause of action for unfair business practices should have been litigated in court because the DRP allows claims for equitable relief to proceed in court. Hilton also contends the trial court erred in confirming the final arbitration award and in denying her petition to vacate or correct the award because the arbitrator exceeded her authority by awarding costs in favor of defendants and against Hilton while Hilton was under bankruptcy protection.

As a threshold matter, we address which arbitration agreement is applicable to Hilton's claims against defendants. In connection with defendants' motion to compel arbitration, the parties referenced both the DRP and the arbitration clause in Hilton's employment application. The DRP is the applicable arbitration agreement. The DRP, which Hilton signed after she became an employee of AMMI, states in no uncertain terms, "This Policy is the full and complete policy relating to the formal resolution of employment-related disputes." The arbitration clause in Hilton's employment application covered only "claims arising out of the submission of this [employment] application." The DRP covers the causes of action in Hilton's first amended complaint, which the trial court ordered the parties to arbitrate.

**The Arbitration Agreement Is Enforceable**

A trial court must grant a petition to compel arbitration based on a written arbitration agreement unless grounds exist to revoke the agreement. (Code Civ. Proc., §§ 1281, 1281.2, subd. (b).) "California courts have uniformly acknowledged that '[t]here is

10

a strong public policy in favor of arbitration agreements.' [Citations.] In light of this policy favoring arbitration, 'doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.]'" (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1278.)

A trial court may refuse to enforce an arbitration agreement "based on general contract principles" where it finds the arbitration agreement is unconscionable. (*Armendariz*, *supra*, 24 Cal.4th at p. 99.) "'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results." (*Id.* at p. 114.) Both procedural and substantive unconscionability must "'be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability,'" but "they need not be present in the same degree." (*Ibid.*) "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid.*)

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).)

"The determination of arbitrability is a legal question subject to de novo review. [Citation.] We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.*, *supra*, 120 Cal.App.4th at p. 1277.) Because the parties did not present disputed extrinsic, our review is de novo.

**Procedural unconscionability**

As set forth above, procedural unconscionability focuses on oppression or surprise in the making of the agreement. (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) "Oppression

11

results from unequal bargaining power, when a contracting party has no meaningful choice but to accept contract terms. Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice." (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 980.)

The DRP is a stand-alone arbitration agreement, clearly labeled and clearly legible in appropriately-sized type. It is not an arbitration clause buried in another document. Hilton signed the DRP, expressly acknowledging she had read the agreement, understood it, and agreed to be bound by its terms. Hilton did not present any evidence indicating she did not have sufficient time to review the agreement, did not understand the agreement, had questions about it, did not want to sign it, or wanted to negotiate its terms. Thus, Hilton has not presented sufficient evidence establishing the DRP is unenforceable due to procedural unconscionability.

Because Hilton cannot establish procedural unconscionability, she cannot demonstrate the DRP is unenforceable due to unconscionability. As explained above, both procedural and substantive unconscionabilty are necessary to invalidate the agreement.

Even assuming Hilton had established some minimal level of procedural unconscionability, we would not invalidate the DRP because she has not established the requisite level of substantive unconscionability to invalidate the agreement.

**Substantive unconscionability**

As discussed above, substantive unconscionability focuses on "'overly harsh'" or "'one-sided'" results. (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) Hilton asserts there are four arbitration provisions that are substantively unconscionable. We address each of those provisions in turn below.

First, Hilton argues, "the arbitration provisions created the risk that Ms. Hilton would have to advance and pay costs of arbitration beyond what she would pay in civil court and that Ms. Hilton may have to pay AMMI's attorneys' fees." In support of this argument, Hilton cites the portion of the arbitration clause in her employment application which states that arbitration of claims arising out of the submission of her employment

12

application "shall be conducted under the commercial rules of the American Arbitration Association [AAA]." She asserts the "cost-sharing and fee-shifting provisions" of the AAA rules are substantively unconscionable. As discussed above, the arbitration clause in the employment application is not applicable to this dispute. Hilton does not argue the fee and cost provisions in the DRP are substantively unconscionable. As explained above, the DRP is "the full and complete policy relating to the formal resolution of employment-related disputes."

Second, Hilton argues "the arbitration provisions are impermissibly one-sided because they require arbitration of claims the employee is likely to bring, while allowing for a civil action on claims the employer is likely to bring." In support of this argument, Hilton cites the portion of the DRP which states, "either the employee or the Company may request equitable relief, including but not limited to injunctive relief, from a court of competent jurisdiction." She asserts this provision is substantively unconscionable because the employer is more likely to bring claims for equitable and injunctive relief than the employee. Belying her assertion, Hilton herself brought a claim for unfair business practices and now argues (for the first time on appeal) that this claim for equitable relief should have proceeded in court under this bilateral provision of the DRP (we address this argument below). We acknowledge the case law supporting Hilton's position. (See, e.g., *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 397 ["allowing the parties access to the courts only for injunctive relief favors [the employer]" because the employer is more likely to seek injunctive relief "to stop employee competition or to protect intellectual property"].) Nonetheless, we disagree this bilateral provision of the DRP is substantively unconscionable. In any event, it would not rise to the requisite level of substantive unconscionability necessary to render the DRP unenforceable given the lack of or minimum procedural unconscionability in this case.

Third, Hilton argues the DRP is substantively unconscionable because it precludes the employee from bringing a claim as a private attorney general. As Hilton points out, last year, the California Supreme Court decided a case holding, "where . . . an

employment agreement compels the waiver of representative claims under the PAGA [Labor Code Private Attorneys General Act of 2004], it is contrary to public policy and unenforceable as a matter of state law." (*Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.)  This arbitration provision is inapplicable to this case as Hilton did not assert a representative claim under the PAGA in her first amended complaint or present evidence indicating she would have filed such a claim but for this waiver.  The substantive unconscionability of this inapplicable provision does not render the DRP unenforceable.  This arbitration provision "can easily be severed without affecting the remainder of the agreement." (*Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at p. 985.)

Fourth, Hilton argues the DRP is substantively unconscionable because it provides, "Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties."  This confidentiality provision is bilateral and has two limitations, allowing disclosure when required by law and with the other side's consent. We do not find this provision substantively unconscionable and Hilton has cited no authority dictating a different finding.

**Defendants Did Not Waive Their Right To Arbitrate**

Hilton contends defendants waived their right to arbitrate "by taking actions inconsistent with their intent to arbitrate."

"'[A] trial court may deny a petition to compel arbitration if it finds the moving party has waived that right.'" (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12.)  "Since arbitration is a strongly favored means of resolving disputes, courts must 'closely scrutinize any claims of waiver.'  [Citations.]  A party claiming that the right to arbitrate has been waived has a heavy burden of proof." (*Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 991.)

"'[N]o single test delineates the nature of the conduct that will constitute a waiver of arbitration.'" (*Zamora v. Lehman*, *supra*, 186 Cal.App.4th at p. 15.)  "In determining waiver, a court can consider '(1) whether the party's actions are inconsistent with the

14

right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. [Citations.]'" (*Sobremonte v. Superior Court*, *supra*, 61 Cal.App.4th at p. 992; *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

Participation in litigation does not automatically result in a waiver of the right to arbitrate. Waiver may occur prior to a judgment on the merits if the party opposing arbitration can show prejudice. (*Zamora v. Lehman*, *supra*, 186 Cal.App.4th at p. 16.) "Prejudice typically is found only where the petitioning party's conduct has substantially undermined" the policy """of arbitration as a speedy and relatively inexpensive means of dispute resolution"" or "substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes Medical Center v. PacifiCare of California*, *supra*, 31 Cal.4th at p. 1204.) "For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence." (*Ibid.*)

""'[T]he question of waiver is one of fact, and an appellate court's function is to review a trial court's findings regarding waiver to determine whether these are supported by substantial evidence." . . . [Citation.]'" (*Zamora v. Lehman*, *supra*, 186 Cal.App.4th at p. 12.)

The trial court's finding defendants did not waive their right to arbitrate is supported by substantial evidence. About four months after Hilton filed her lawsuit,

15

AMMI informed her of its intention to enforce the arbitration provisions in the DRP. At that point, AMMI had filed its answer and McKenzie had filed a demurrer to the one cause of action Hilton asserted against her. McKenzie took her demurrer off calendar before Hilton submitted any briefing on the matter. Defendants did not propound any discovery to Hilton. AMMI responded to Hilton's discovery—discovery Hilton propounded *after* AMMI announced its intention to enforce the arbitration agreement.

Hilton's claim of waiver lacks merit because defendants did not wait until the eve of trial or until they had litigated the matter to their advantage before seeking arbitration. To the extent AMMI acted inconsistently with the right to arbitrate—by having its lawyers produce the arbitration agreement to Hilton more than a year before she filed her lawsuit (in response to her request for her personnel file), and then waiting for four months after she filed her lawsuit to invoke its right to arbitrate—Hilton cannot show AMMI's actions caused prejudice.

**Hilton Did Not Ask The Trial Court Or The Arbitrator To Allow The Unfair Business Practices Cause Of Action To Proceed In Court As A Claim For Equitable Relief**

For the first time on appeal, Hilton contends the trial court should not have ordered the parties to arbitrate her unfair business practices cause of action because the DRP allows claims for equitable relief to proceed in court. We will not entertain this contention at this juncture when Hilton never made this argument below. She never informed the trial court or the arbitrator that to the extent the arbitration agreement was found to be enforceable she wanted this one cause of action (out of 11) to proceed on its own in court. We will not allow Hilton a second chance on this claim because she has belatedly decided on appeal she would have been better off seeking to have this cause of action heard in court.

**The Arbitrator Exceeded Her Authority By Awarding Costs Against Hilton**

Hilton contends the trial court erred in confirming the final arbitration award and in denying her petition to vacate or correct the award because the arbitrator exceeded her authority by awarding costs in favor of defendants and against Hilton while Hilton was under bankruptcy protection. Hilton asserts the Bankruptcy Code's automatic stay

16

provision, title 11 United States Code section 362(a), prevented the arbitrator from ruling on any claim for relief against Hilton, the debtor, including defendants' claim for costs.

Under Code of Civil Procedure section 1286.6, subdivision (b), a court may correct an arbitration award if the court determines the arbitrator exceeded her powers and "the award may be corrected without affecting the merits of the decision upon the controversy submitted." We review the trial court's ruling on the petitions to confirm and to vacate or correct the arbitration award de novo. (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 408.)

Defendants do not dispute that, to the extent the arbitrator violated the Bankruptcy Code's automatic stay provision, she exceeded her authority. Defendants argue, however, that the automatic stay did not preclude the arbitrator from awarding costs against Hilton in an action prosecuted by Hilton.

"Under 11 U.S.C. § 362(a)(1), a bankruptcy petition operates as an automatic stay of the commencement or continuation of a judicial proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the bankruptcy. '[T]he automatic stay does not apply to the continued prosecution of actions by the trustee or debtor in possession. Those entities may continue or pursue litigation without leave of court (or release of stay under section 362).' [Citations.] This case was brought by the debtor and, therefore, § 362(a)(1) does not automatically bar additional proceedings in this case.

"The automatic stay provision, however, may proscribe certain filings seeking affirmative relief against the debtor. '[A]ll proceedings in a single case are not lumped together for purposes of automatic stay analysis.' [Citation.] 'Within a single case, some actions may be stayed, others not.['] . . . [Citation.] Since a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than a plaintiff who is awarded judgment on claim asserted in a complaint, *the term 'action or proceeding,' for purposes of § 362(a)(1), is construed to include any pleading that asserts a claim on which relief is sought*. . . . [For example,] the automatic stay applies to a motion seeking an award of

17

attorney's fees [and costs] against the debtor because it is 'an action or proceeding against the debtor.' See *Vasile v. Dean Witter Reynolds, Inc*., 20 F.Supp.2d 465 (E.D.N.Y. 1998) (counterclaims for costs and attorney fees that were asserted against debtor in action brought by debtor were stayed pending final determination of debtor's bankruptcy petition)[.]" (*Derringer v. Fitch* (D.N.M., June 8, 2005, No. Civ. 03-149 MV/RLP) 2005 WL 5111008, italics added.)

Here, defendants brought claims for relief against Hilton—a motion for attorney fees and a memorandum of costs—while she was under bankruptcy protection. All claims for relief against Hilton were automatically stayed under the Bankruptcy Code. Thus, the arbitrator violated the automatic stay and exceeded her authority by ruling on defendants' motion for attorney fees and memorandum of costs.

At oral argument, Hilton asked this court to apply *Williams v. Chino Valley Independent Fire District* (2015) 61 Cal.4th 97 (*Williams*), a California Supreme Court case decided after this case was fully briefed on appeal. In *Williams*, the Court held an award of costs under the FEHA requires a finding "the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Id*. at p. 115.) At oral argument, Hilton argued, and defendants did not dispute, a FEHA cost award in this case would be improper under *Williams* because the arbitrator stated in the final award she did not find Hilton's claims were frivolous. We need not address the applicability of *Williams* further given our conclusion the arbitrator exceeded her authority in awarding costs against Hilton while she was under bankruptcy protection.

Pursuant to Code of Civil Procedure section 1286.6, subdivision (b), we correct the arbitration award by striking the order of costs against Hilton. In all other respects we affirm the judgment confirming the arbitration award.

18

## DISPOSITION

The arbitration award is corrected by striking the $15,166.37 cost order in favor of defendants and against Hilton.  In all other respects, the judgment confirming the arbitration award is affirmed.  Each side is to bear its own costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.